KRENCH v. STATE OF MICHIGAN.

1. TAXATION—PUBLIC DOMAIN—FEE TITLE IN STATE.

Land sold for unpaid taxes and purchased for the State by the auditor general, not redeemed within period allowed by law and found abandoned, which was removed from homestead entry and sale for homestead purposes and deeded by the auditor general to State in fee became a part of the public domain.

2. PUBLIC LANDS—PUBLIC DOMAIN—STATUTES.

Term ''public domain,'' as used in statutes, means lands owned by the State (Act No. 280, Pub. Acts 1909).

3. STATUTES—TITLE OF AN ACT.

The title of an act need not serve as an index but is sufficient if it fairly expresses the subject of the legislation and conveys comprehension of its germane provisions.

4. PUBLIC LANDS—STATUTES.

Provisions of statute prescribing public domain commission's powers and duties with reference to acquisition and disposition

of land owned by the State in fee *held*, pertinent to purpose of act as recited in title that it was to create the public domain commission and prescribe its powers and duties.

5. TAXATION—CHAIN OF TITLE.
   Original title to land sold for unpaid taxes and ultimately deeded by the auditor general to the State has come to an end and a new chain of title thereby originates with the State (Act No. 206, Pub. Acts 1893, as amended; Act No. 280, Pub. Acts 1909, as amended).

6. PUBLIC LANDS—DEEDS—MINES AND MINERALS—TAXATION.
   Deed by public domain commission, reserving mineral, coal, oil and gas rights to the State and given pursuant to authority conferred by Act No. 280, Pub. Acts 1909, *held*, no part of statutory proceedings instituted for purpose of collection of taxes (Act No. 206, Pub. Acts 1893, as amended).

7. SAME—DEEDS—RESERVATIONS—MINES AND MINERALS.
   The State, having title to land of the public domain in fee, may deed surface fee, reserving to itself coal, oil, gas and minerals beneath.

8. SAME—LEGISLATIVE POLICY.
   The legislature may establish a policy with reference to land owned by the State in fee without amending statute or statutes setting forth method by which the State acquired such land.

9. REAL PROPERTY—SEVERANCE OF DIVISIBLE FEES.
   The divisible fees in real property may be severed by bargain and sale deed with reservation of oil, gas and minerals in the grantor.

10. TAXATION—CLASSIFICATION OF LANDS ACQUIRED BY THE STATE.
    Lands acquired by the State through tax proceedings are classified as (1) homestead entry for actual settlement and five years' residence with purchase price at 10 cents per acre, (2) homestead land held for three years without application for such purpose, examined and appraised and placed on sale, and (3) lands reserved from homestead entry and sale for homestead purposes and deeded to the State in fee (Act No. 206, Pub. Acts 1893, as amended).

11. PUBLIC LANDS—TAXATION—DEEDS—STATUTES.
    Provision of general tax law that auditor general shall give deed of fee title to holder of certificate of purchase at a tax sale

after expiration of period fixed for redemption *held*, to have no application to deed with reservation of coal, oil, gas and minerals, from public domain commission of land withheld from homestead entry and sale (Comp. Laws 1929, §§ 3464, 5848).

12. SAME—MINES AND MINERALS—RIGHT OF INGRESS AND EGRESS.

Claim of grantee of deed of land, once public domain, in which State had reserved coal, oil, gas and mineral rights, that State and its lessees of such rights had no right to enter land and remove oil because statute gave no such right *held*, without merit in view of recitals in his deed and that of his predecessors in new chain of title, which were binding upon him, giving such right to the State, its officers, lessees, assigns, agents and workmen (Act No. 280, Pub. Acts 1909).

13. STATUTES—IMMEDIATE EFFECT—PUBLIC DOMAIN LANDS.

Whether or not act setting forth legislative policy with respect to public domain should have been given immediate effect or not is a legislative question and, in the absence of a showing of an abuse of such power, is presumptively proper (Act No. 280, Pub. Acts 1909).

14. PUBLIC LANDS—PUBLIC DOMAIN—SALES—LEASES.

Lease of reserved oil, gas or mineral right by State in lands of public domain *held*, not a sale within meaning of Act No. 280, Pub. Acts 1909, giving purchaser of surface priority only in case of sale of such reserved right.

15. SAME—DEEDS.

Grantee in chain of title, commencing with that of purchaser of public domain land subject to reserved coal, oil, gas and minerals, takes only such title as his predecessors in title acquired from the State.

Appeal from Ogemaw; George (Fred W.), J. Submitted June 17, 1936. (Docket No. 82, Calendar No. 38,915.) Decided October 5, 1936.

Bill by Nick Krench against State of Michigan, Percy J. Hoffmaster, director of the Department of Conservation, Ray E. Cotton, Secretary of the Department of Conservation, Shell Petroleum Corporation, a foreign corporation, and others to quiet

title to land and for other relief. From denial of defendants' motions to dismiss, certain defendants appeal. Reversed and bill dismissed.

*Emil W. Colombo (Colombo, Colombo & Colombo,* of counsel), for plaintiff.

*David H. Crowley,* Attorney General, and *Edmund E. Shepherd, Daniel J. O'Hara* and *A. T. Washburn,* Assistants Attorney General, for the State of Michigan, Percy J. Hoffmaster and Ray E. Cotton.

*Shields, Silsbee, Ballard & Jennings* and *Thompson, Mitchell, Thompson & Young (Ronald J. Foulis* and *Charles M. Spence,* of counsel), for defendant Shell Petroleum Corporation.

*A. W. Penny,* for defendants Strange, Fortney and Naph-Sol Refining Company.

*Alexis J. Rogoski, Floyd A. Calvert* and *Raymond R. Kendrick, amici curiæ.*

WIEST, J.  The bill herein was filed to obtain reformation of a quitclaim deed by the State of public domain land and to quiet title to oil, gas and mineral ownership thereon, restrain trespass and have an accounting for oil and gas removed from the premises.

Unoccupied and unimproved land in Ogemaw county was sold for unpaid taxes for several years and purchased in behalf of the State by the auditor general and, not having been redeemed within the period allowed by law and found abandoned, was removed from homestead entry and sale for homestead purposes, and deeded by the auditor general to the State in fee. It thereby became a part of the public domain.

April 6, 1911, Lucinda Turner made application to purchase the land in suit and stated in her applica-

tion, in accordance with the provisions of Act No. 280, Pub. Acts 1909 : *

"It is expressly understood, that any deed or deeds issued upon the above application shall contain the following clause: 'Saving and excepting out of this conveyance and always reserving unto the said State of Michigan, all mineral, coal, oil and gas, lying and being on, within or under the said lands hereby conveyed, with full and free liberty and power to the said State of Michigan, its duly authorized officers, representatives and assigns, and its or their lessees, agents and workmen, and all other persons by its or their authority or permission, whether already given or hereafter to be given, at any time and from time to time to enter upon said lands and take all usual, necessary or convenient means for exploring, mining, working, piping, getting, laying up, storing, dressing, making merchantable, and taking away the said mineral, coal, oil and gas, pursuant to the provisions of section eight of act two hundred eighty, public acts of 1909,' * and I do hereby agree to accept such deed and abide faithfully by said conditions as expressed therein."

Such a deed was executed by the State, accepted and recorded by Lucinda Turner, and the terms mentioned complied with by her in her subsequent conveyance to George W. Everline on May 15, 1911, and by Everline in his conveyance to plaintiff on March 9, 1933, with each deed containing verbatim the reservation mentioned.

The State, in January, 1934, leased its oil and gas rights in the premises under royalty to a corporation. Oil and gas were found and, in October, 1935,

---

* Act No. 280, Pub. Acts 1909 was somewhat revised by Act No. 194, Pub. Acts 1911, and as revised and thereafter amended appears as 2 Comp. Laws 1929, § 5838 *et seq.* Matter formerly contained in section 8 appears, with additions, in section 12 (2 Comp. Laws 1929, § 5848).—REPORTER.

plaintiff filed the bill herein and, upon hearing in the circuit court, was granted full relief. Defendants prosecute review on grounds hereinafter stated.

We quote the questions presented by plaintiff:

"Plaintiff contends:

"1.    That when Lucinda Turner, plaintiff's predecessor in the record title, purchased from the State, she was entitled as a matter of law to a deed conveying an absolute title in fee of all the right, title or interest of the State to such tax lands acquired or accrued by virtue of the original sale to the State, free from reservations of oil, gas and mineral rights, in accordance with the general tax act, being Act No. 206, Pub. Acts 1893, as amended by Act No. 107, Pub. Acts 1899, and Act No. 141, Pub. Acts 1901, and plaintiff, through his chain of title, is therefore the owner of the lands and of all oil, gas and minerals found therein.

"2.    That Act No. 280, Pub. Acts 1909, and its amendatory acts have no application to tax lands.

"3.    That Act No. 280, Pub. Acts 1909, as amended (2 Comp. Laws 1929, §§ 5838–5851), and Act No. 174, Pub. Acts 1929 (2 Comp. Laws 1929, § 5655), and Act No. 320, Pub. Acts 1929 (2 Comp. Laws 1929, § 5848), on which defendants rely are not listed as amendments or repeal of section 84 (1 Comp. Laws 1929, § 3477), or section 131 (1 Comp. Laws 1929, § 3527), of the tax acts, under the notes to the compiler's references in the public acts or compiled laws, nor in Shepard's Citator.

"4.    That if Act No. 280, Pub. Acts 1909, and its amendatory acts were intended to apply to tax lands, said act and its amendatory acts are unconstitutional and void, because they violate State Constitution, art. 5, § 21, as hereinafter mentioned.

"5.    That even if Act No. 280, Pub. Acts 1909, and its amendatory acts are constitutional, defendants had no right to enter plaintiff's lands and remove oil

therefrom, because such acts do not give a right of ingress and egress to his lands.

"6.   That Acts Nos. 174 and 320, Pub. Acts 1929, under which defendants' lease was executed, were enacted to stop the commission from assuming power over oils and minerals on tax lands, not owned by the State.

"7.   That even if Act No. 280, Pub. Acts 1909, and its amendatory acts are constitutional, and, if applicable to tax lands, the lease executed by defendants is invalid because of the failure of defendants to comply with Act No. 320, § 12, Pub. Acts 1929, in that they failed to obtain a waiver of the oil and gas rights from plaintiff or his predecessor, the record title owner of such lands, as required by said section.

"8.   That the execution of the lease by officers of the State, and defendants' entry and possession of plaintiff's lands without having obtained a waiver of his oil and gas rights, constitute a confiscation of his property, a deprivation of it without due process of law, a denial of the equal protection of the laws, contrary to the provisions of the fourteenth amendment to the Federal Constitution.

"9.   That all defendants, except the State of Michigan and P. J. Hoffmaster, are wilful trespassers and liable for the loss suffered by plaintiff.

"10.   That the State of Michigan does not have a sovereign right to mines and minerals in lands. * * *

"13.   That plaintiff is entitled to a decree quieting title in him to the lands involved and an accounting for the value of all oil extracted or removed therefrom and for all loss or damage sustained by him."

Plaintiff contends that Act No. 280, Pub. Acts 1909, creating the public domain commission, and requiring that commission, in making sales of State owned land, to reserve oil, gas and mineral rights, is unconstitutional because the body of the act is broader

than the title, and the act was given immediate effect. We quote the title:

"An act to create a commission to be known as a public domain commission; to provide for the appointment of such a commission and to fix their terms of office; to prescribe their powers and duties; to make an appropriation to carry out the provisions of this act; and to repeal all acts and parts of acts inconsistent herewith."

The body of the act runs true to the title if its provisions apply to land owned by the State in fee.

The term "public domain," in State legislation, means lands owned by the State. No more comprehensive purpose could possibly be declared than that mentioned in the title. The title need not serve as an index; it is sufficient if it fairly expresses the subject of the legislation and conveys comprehension of its germane provisions. *Westgate* v. *Township of Adrian,* 161 Mich. 333.

The land in suit was a part of the public domain and the act in all of its provisions is pertinent to the powers and duties to be exercised by the public domain commission with reference to acquisition and disposition of land owned by the State in fee. That act, in section 8 thereof, fixed the governing action relative to sales of State owned land as follows:

"When any sales are made by and under the direction of the commission the deeds by which said lands are conveyed shall reserve all mineral, coal, oil and gas rights to the State and said rights shall be owned by the State; but said commission shall have power to make contracts with private individuals or corporations for taking ore, coal, gas or oil from said lands upon a royalty basis upon such terms as to said commission may be deemed just and equitable."

This was the act with which Lucinda Turner complied in making the purchase and which plaintiff, whose chain of title was derived thereunder, now claims to be void.

The land in suit was neither homestead land nor land held open for homestead purposes but land withdrawn from such entry and sale and owned in fee by the State and, by such owner, placed on the market for sale by the commission and so sold. Plaintiff has all he ever purchased.

Plaintiff avers no equities but plants himself up on asserted rights in point of law, his main contention being that his predecessor in title was entitled to receive, in spite of the conveyance applied for and granted, and did obtain, an absolute title in fee simple by virtue of Act No. 206, § 131, Pub. Acts 1893, as amended by Act No. 141, Pub. Acts 1901.

The act of 1893 (Act No. 206), known as the general tax law, provided (title):

"For the collection of taxes heretofore and hereafter levied; making such taxes a lien on the lands taxed, establishing and continuing such lien, providing for the sale and conveyance of lands delinquent for taxes, and for the inspection and disposition of lands bid off to the State and not redeemed or purchased."

Section 131 (Act No. 206, Pub. Acts 1893), as amended by the act of 1901 (Act No. 141), provides, so far as here material, that:

"All such lands shall be held by the commissioner of the State land office subject to entry as homestead lands unless withheld and reserved in the manner following: The commissioner of the State land office and the auditor general, acting jointly, may reserve and withhold from entry under the homestead right such portion of the lands deeded by the auditor gen-

eral to the State under section one hundred twenty-seven of act number two hundred six of the public acts of eighteen hundred ninety-three and acts amendatory thereto as, in their opinion, may not be advantageous to open for homestead, and they may withhold and reserve such land from entry for so long a time as in their opinion will best subserve the interests of the State. The said land commissioner and auditor general shall affix a minimum price upon all lands so reserved and withheld, or which may hereafter be reserved and withheld. All such lands withheld from homestead entry shall be offered for sale by said land commissioner at prices to be discretionary with him.''

The act then provided for certain rules and regulations relative to such sales and, in case of entry for homestead, the commissioner might issue a certificate upon receiving payment of the sum of ten cents per acre, conditioned that the purchaser should reside on the land for five years and improve the same and, at the expiration of the five years, upon proof of fulfillment of the contract, the purchaser should be entitled to a deed and ''such deed shall convey an absolute title to the lands sold, and shall be conclusive evidence of title in fee in the grantee, and it shall be the duty of the State of Michigan to defend and prosecute all suits brought to protect such title, and the State shall pay all costs adjudged against the homesteader.''

The act further provided:

''That any person who has purchased and entered into possession of any lands as a homestead, under and by virtue of the provisions of this section, as originally passed, or as amended when said lands had been bid off to the State and were held by the State for the taxes of one or more years, and said lands were delinquent for taxes for three or more

years, shall, on performing the other conditions of said section, as amended, receive a deed therefor, as provided herein, and shall be deemed to have a good, sufficient fee simple title to said premises, to all intents and purposes the same as though said lands had been bid off to the State for a consecutive period of more than three years, as originally provided in section one hundred and twenty-seven of said act. And in all cases where the lands have been taken as a homestead as set forth in last foregoing proviso, all actions of ejectment or to recover possession of said lands or to set aside the title of such homesteader by any person, firm or corporation claiming the original or government title, shall be commenced within six months after this act shall take effect and not afterwards.''

And—

''In case written application shall be made to the commissioner of the State land office to purchase any description of said lands so held by the State for more than three years, as herein stated, it shall then be the duty of the commissioner of the State land office to examine and appraise the value of the land so offered to be purchased as aforesaid. The commissioner of the State land office shall make a record of said appraisement in a book to be kept in his office for that purpose. After such examination and appraisement, if there has been no application to homestead said lands, it shall be competent and the commissioner of the State land office is hereby authorized to sell such description of land to any person so applying for the purchase thereof, but at not less than the appraised valuation, and he shall not be authorized to sell to any one person over two hundred and forty acres of said land. In case of the sale of said lands, the commissioner of the State land office shall execute and deliver to the purchaser a deed in such form as he may determine, which shall convey to the

purchaser the same interest as is provided for a deed where said lands have been homesteaded as provided in this section.''

The State contends that the statutory provisions, relied on by plaintiff, do not apply to lands withheld by the State from homestead entry or sale for homestead purposes and that such was the property bargained for and conveyed to Lucinda Turner.

The State held title in fee simple. The original title had come to an end and a new chain of title originated with the State. The deed to Lucinda Turner was no part of any statutory proceedings instituted for the purpose of foreclosing the interest of an original owner who had become delinquent in the payment of taxes. This should be kept in mind for it notes the distinction between sales calculated to cut off former ownership and that of vested ownership in the State. In the one instance the statute divests title in one and vests it in another through tax foreclosure proceedings, while in the other a new title originates by deed from the State. The State, having title in fee, could, like any other owner in fee, deed with reservation of the oil, gas and minerals. It needed no amendment to an inapplicable statute to enable the State, by legislative enactment, to establish a policy with reference to land owned by the State in fee. The deed to Lucinda Turner was not a tax sale deed but one upon bargain, with sale by the State, the owner in fee of the land, and such owner could and did sever the divisible fees.

The act of 1909 (Act No. 280) was evidently the result of Act No. 188, Pub. Acts 1907, which provided for a commission to prepare and submit a report to the next legislature for the ''protection, improvement, utilization, and settlement of, and for the bet-

ter and more economical administration of the affairs and business of the State connected with delinquent State tax lands, now owned or hereafter acquired.''

Lands acquired by the State through tax proceedings are placed in three classes by the act of 1893, and the amendments thereto:

1.   Homestead entry for actual settlement and residence thereon for five years with purchase price at 10 cents per acre;

2.   Homestead land held for three years without application for such purpose, examined and appraised and placed on sale;

3.   Lands reserved from homestead entry and sale for homestead purposes and deeded to the State in fee.

The land purchased by Lucinda Turner was of the last class.

When the State restored land of class three to the market the disposition thereof was not within any tax act, such as sales under classes one and two. The title had become absolute in the State, and with the State a new chain of title started.

The State, as owner in fee of the land, could sever the estate in fee to the surface from that of fee in the oil and gas underlying the surface.

The general tax law, Act No. 206, Pub. Acts 1893 (1 Comp. Laws 1929, § 3464), provided that on presentation of a certificate of sale by a purchaser at a tax sale after expiration of the period fixed for redemption—

''the auditor general or his deputy shall execute and deliver to the purchaser, his heirs or assigns, a deed of the land therein described, unless the sale thereof shall have been redeemed or annulled as by law provided, which deed shall be entitled to record in the

office of the register of deeds of the proper county, in the same manner and with like effect as other deeds duly witnessed, acknowledged and certified. Such deeds shall convey an absolute title to the lands sold, and be conclusive evidence of title, in fee, in the grantee, subject, however, to all taxes assessed and levied on such lands subsequent to the taxes for which the same was bid off.''

Clearly this provision has no relation to the purchase made by Lucinda Turner.

There is no merit in the claim that, even if the act of 1909 (Act No. 280) is constitutional, the State and its lessees had no right to enter plaintiff's land and remove oil therefrom because the statute gives no right of ingress and egress. The very deed, under which plaintiff claims, as well as the deeds of his predecessors, gave such right to the State, its officers, assigns, lessees, agents and workmen, and plaintiff is bound thereby.

Whether the act of 1909 (Act No. 280) should have been given immediate effect or not was for legislative determination and, in the absence of a showing of an abuse of the power, the legislative determination must stand.

Plaintiff contends that, under the express provisions of Act No. 320, Pub. Acts 1929 (2 Comp. Laws 1929, § 5848), the State's lease to the Shell Petroleum Corporation was void.

The provision relied upon reads:

''Provided further, That the commission is also authorized to sell all reserved mineral, coal, oil and gas rights to such lands upon such terms and conditions as the commission may deem proper. The owner of such lands as shown by the records shall be given priority in case the commission shall authorize any sale of such lands and unless he shall

waive such rights, the commission shall not sell such rights to any other person."

There is a clear distincttion to be observed between the sale by an owner and a lease. In the one instance the title is disposed of and in the other the title is retained.

It would do violence to the language of the statute and the rights of the State to hold that leasing by the State was a sale within the meaning of the statute.

At the time of the lease in January, 1934, the record owner of the land was Mr. Everline, although plaintiff held an unrecorded deed.

When Lucinda Turner purchased from the State the land in suit was a part of the public domain, removed from all tax law provisions in its retention or disposition. It had passed beyond tax law homestead provisions; it had ceased to be open to purchase as land bid for the State at tax sales, and the title thereto in fee had come to rest in the State to be dealt with as legislative public policy might be declared.

Act No. 280, Pub. Acts 1909, declared such public policy and Lucinda Turner complied therewith and she, and all others claiming under or through her grant of title, can now make no other claim.

Plaintiff made no case and the decree in the circuit court is reversed and the bill dismissed, with costs to defendants.

North, C. J., and Fead, Butzel, Bushnell, Sharpe, and Toy, JJ., concurred. Potter, J., did not sit.