OAKLAND COUNTY v. STATE LAND OFFICE BOARD.

1. TAXATION—STATE LAND OFFICE BOARD ACT—PURPOSE.
   The manifest purpose of the State land office board act, as amended, is to enable the State, where there has been no redemption, to obtain taxes and thereupon open the way for lesser taxing units also to obtain taxes due (Act No. 155, Pub. Acts 1937, as amended).

2. STATUTES—AMBIGUITY—CONSTRUCTION.
   The true sense of an ambiguous statute is to be gathered from a consideration of the evident purpose underlying its uncertain provisions.

3. TAXATION—MANDAMUS—COUNTY'S RIGHT TO DEED OF LAND SOLD FOR TAXES.

Acceptance by auditor general of county's tender of money for parcel of land desired by county for public use and deed by State land office board to county of such parcel will not be compelled by writ of mandamus sought by county under State land office board act as amended since to do so would cut off taxes due lesser tax units, place county in the shoes of the State and vest it with title in fee without being subject to redemption by the owner either by bidding at the sale or matching the highest bid, and thereby defeat the clear purpose of the act, where act does not clearly give county right to have land deeded to it and withdrawn from so-called scavenger sale (Act No. 155, §§ 5, 7, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts. 1939).

4. MANDAMUS—WRIT OF GRACE.

The writ of mandamus is one of grace.

5. COSTS—PUBLIC QUESTION—CONSTRUCTION OF STATE LAND OFFICE BOARD ACT.

No costs are allowed in mandamus proceeding wherein construction of provisions of State land office board act relative to county's rights are involved (Act No. 155, §§ 5, 7, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939).

Mandamus by Oakland County to compel the Auditor General to receive moneys tendered and to compel the State Land Office Board to issue a deed. Masonic Temple Association of Pontiac intervened. Submitted December 27, 1940. (Calendar No. 41,128.) Writ denied February 7, 1941.

*Charles L. Wilson,* Prosecuting Attorney, and *Harry J. Merritt,* Corporation Counsel, for plaintiff.

*Thomas Read,* Attorney General, and *Edmund E. Shepherd* and *Peter E. Bradt,* Assistants Attorney General, for defendants.

*Bryan Kinney,* for intervener.

Wiest, J.   By virtue of sale for taxes[*] in 1938, title to the property of the Masonic Temple Association of Pontiac vested in the State of Michigan under the terms of Act No. 155, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 3723-1 *et seq.,* Stat. Ann. 1940 Cum. Supp. § 7.951 *et seq.*).

The county of Oakland desiring the property for public purposes, the board of supervisors took action to acquire the same and, to that end, on February 10, 1940, tendered the State officials the sum of $55,654.87, that being the amount of the 1938 State bid for the property, plus interest at one per cent. per month to and including the time of tender, and requested that the premises be withheld from the so-called "scavenger sale" in February, 1941, and that the State officers convey the same to the county in fee.   The State officers refused so to deed the property and the county of Oakland seeks our writ of mandamus directing the State officers to accept the tender and execute a deed conveying title to the county in fee.

In answer the State officers contend:

"First: The State concedes that, upon expiration of the period of redemption of lands from the 1938 tax sale, it acquired an absolute title, subject, however, to the provisions of the land office board act, as construed by this court in *Oakland County Treasurer* v. *Auditor General* (1940), 292 Mich. 58.

"Second: We also admit that, under the terms of the general property tax law *supra,* the vesting of such an absolute title in the State cancelled all taxes assessed against the land, and the State land office board had control and jurisdiction, subject to the

---

[*] See Act No. 114, Pub. Acts 1937, later amended by Act No. 282, Pub. Acts 1939 (Comp. Laws Supp. 1940, §§ 3459, 3459-1, Stat. Ann. 1940 Cum. Supp. §§ 7.112, 7.112[1]).—Reporter.

provisions of the act creating that body and defining its powers.

"Third: While, it is doubtless true, the county of Oakland, or any other 'municipality,' possessed the statutory right to have lands withheld from the 'scavenger' sale, it is also correct to state, we believe, that the further right, granted by section 5 of the act, to pay the amount of the State's bid at the annual sale in 1938, obtain a deed and acquire the property for public use, was a privilege strictly in the nature 'redemption,' an extension of the equity of redemption accorded under the general property tax law, which might be claimed, however, only by municipalities, and not by the owner of the land, *Oakland County Treasurer* v. *Auditor General, supra,* and, as in the case of any other redemption under the general property tax act, such a redemption would be conditioned upon revival of the cancelled tax liens which had accrued in 1936 or subsequent years.

"Fourth: In short, the legislature, in enacting section 5 of this statute, did not intend to render it possible for a taxing unit to take undue advantage of any other municipality, or the former owner, or the State itself, and thus drive a hard bargain in obtaining for its exclusive use a valuable piece of property for a low consideration.

"It would seem to follow that the deed to which the county would be entitled must in fairness to all concerned merely convey title subject to such tax liens as were levied by assessment subsequent to 1935."

The Masonic Temple Association of Pontiac has intervened and contends that the county cannot acquire title to the property to the exclusion of the former owner (Masonic Temple Association), without bidding upon the property at "scavenger sale;" that the primary purpose of the act is:

"To return the property to the tax rolls where it would contribute its just share of tax revenue to

the taxing bodies," and, "to do this without depriving the original owner of his equity in the property if possible so to do."

Intervener also states:

"It is submitted that should plaintiff's application be granted, neither of the fundamental purposes of this act would be accomplished. It would not be returned to the tax rolls and the original owner would be dispossessed.

"It is submitted that the Masonic Temple Association should have exactly the same right as any other land owner and should not be penalized by the fact that its property happens to be desirable for 'public purposes.'"

Section 5 of Act No. 155, Pub. Acts 1937, before amendment in 1939, with exception not here pertinent, provided:

"The last fee owner or owners of any parcel of land or any municipality not returning its delinquent taxes to the county treasurer may redeem such parcel of land by making application therefor to the auditor general or county treasurer within eighteen months following such annual tax sale, upon forms prescribed by the auditor general, and by paying with such application to the auditor general or county treasurer the amount for which said parcel of land was bid in by the State plus interest thereon from the date of sale at one per cent. per month or fraction thereof."

There is more to this section 5, but not of moment here. That section was amended by Act No. 244, Pub. Acts 1939, without reenacting the part above mentioned, and now reads as follows:

"Any municipality may at any time prior to the sale provided for in section 7 of this act make application to the State land office board for the with-

holding of the lands in said application from the said sale, for a period of one year from the date the title vests in the State, and the said State land office board shall withhold such lands from said sale, which lands shall be held subject to the lien of the city for delinquent taxes and special assessments. In the event the taxes on said lands included in said application are not redeemed or paid by said municipality, such lands shall be offered for sale at the next succeeding sale held the following year as provided in section 7 of this act the same as though said application had not been made and the proceeds of such sale paid *pro rata* to such municipality as provided in section 10 of this act."

Section 5, as amended, also provides:

"The term 'owner' as used in this act shall mean the owner in fee, mortgagee, land-contract vendee, or one having a substantial interest by way of actual investment in the property, priority to be given the one having the largest financial investment in the property.

"The term 'municipality' as used in this act shall mean any county, city, village, township or school district."

Plaintiff invokes section 5 of the act as amended in 1939.

Section 7 of the act, as amended, requires the State land office board to prepare lists of property to be sold at the so-called "scavenger sale" to be held on the second Tuesday of February of each year, omitting therefrom, however, parcels of land conveyed or deeded under section 5.

The manifest purpose of the act as amended is to enable the State, where there has been no redemption, to obtain taxes and thereupon open the way for lesser taxing units also to obtain taxes due.

Plaintiff seeks a conveyance cutting off all taxes due such lesser tax units and to that end invokes a

holding placing itself in the shoes of the State and vesting it with title in fee without being subject to what the State otherwise would have to do. This would defeat the clear purpose of the act by cancelling all taxes due the lesser taxing units, prevent the so-called "scavenger sale" under which the taxed owner can still save the property by bid at the sale or by meeting the highest bid, and ought not to be done unless the act, as amended, leaves no other course open.

The act as amended is ambiguous, and its true sense is to be gathered from a consideration of the evident purpose underlying its somewhat uncertain provisions.

Title is in the State, it is true, but it is there for a purpose. Previous to the amendment of 1939 the former owner might redeem or match the highest bid at the "scavenger sale;" but now, it is claimed, the municipality may prevent the former owner of right to bid at a sale by merely paying the State the amount of its bid for the premises and interest, et cetera.

The act of 1937, as amended by the act of 1939, does not clearly grant plaintiff right to the deed demanded and, for that reason and also because the writ of mandamus is one of grace, the writ is denied.

No costs.

Sharpe, C. J., and Bushnell, Boyles, Chandler, North, McAllister, and Butzel, JJ., concurred