ROLLAND *v.* ROLLAND.

1. FRAUD—NONPAYMENT OF TAXES ON HOMESTEAD OF LIFE TENANT—
EVIDENCE.

  In suit by heirs of one cotenant, a remainderman, who had pre-
  deceased life tenant against other cotenant who survived life
  tenant, for fraud and neglect in allowing homestead of life
  tenant to be sold for taxes, evidence failed to show any fraud.

2. TAXATION—LIFE TENANCY—REMAINDERMAN.

  During lifetime of life tenant such person has the duty to pay
  property taxes as the remaindermen during such period do
  not have to pay them, except as it may be duty imposed in
  some way other than by statute.

3. SAME—TERMINATION OF COTENANCY FOR NONPAYMENT OF TAXES.

  A cotenancy in land terminates when title becomes absolute in
  the State because of nonpayment of taxes.

4. SAME—NONPAYMENT OF TAXES—TITLE OF STATE.

  When the State's title to land becomes absolute for nonpayment
  of taxes, the original title comes to an end and a new chain
  of title starts.

5. SAME—SCAVENGER SALE—NATURE OF RIGHT TO MATCH HIGH BID.

  When State acquired title in fee to land sold for delinquent
  taxes, former owners ceased to have any more interest in the
  land than any stranger to the title, the privilege to meet high
  bid at scavenger sale not being a present vested right or a
  present interest prior to the sale (Act No. 155, Pub. Acts
  1937, as amended by Acts Nos. 29, 244, 329, Pub. Acts 1939).

6. SAME—SCAVENGER SALE—PURCHASE BY COTENANT.

  An ordinary cotenant does not, at so-called scavenger sale, pur-
  chase land from State which had acquired title for nonpayment
  of taxes for the benefit of another ordinary cotenant without
  special circumstances.

---

Agent must account, see 2 Restatement, Agency, §§ 382, 393;
agent's competition with principal in subject matter of agency after
termination of agency, § 393, comment e.

7. SAME—SCAVENGER SALE—REMAINDERMEN.

> Where plaintiffs, heirs of coremainderman who had predeceased life tenant, mother of such remainderman and defendant, upon which remaindermen testator had imposed burden of caring for mother during her lifetime, where taxes were not paid, property was sold at so-called scavenger sale, and defendant acquired title by matching highest bid, no special circumstances were presented whereby defendant held title in trust for plaintiffs.

8. LANDLORD AND TENANT—COTENANCY—DIVISION OF RENTS.

> Decree awarding plaintiffs, as heirs of one remainderman, a share of rents collected by defendant remainderman between date of death of life tenant and date State acquired property for nonpayment of taxes but disallowing them any interest in the property, title to which defendant had acquired by matching highest bid at scavenger sale, *held*, proper.

Appeal from Genesee; Gadola (Paul V.), J. Submitted April 9, 1946. (Docket No. 72, Calendar No. 43,320.) Decided June 3, 1946.

Bill by Thomas H. Rolland and others against Samuel Rolland for an accounting, to have a one-half interest in certain property decreed to be in plaintiffs and for other relief. Decree for defendant. Plaintiffs appeal. Affirmed.

*Walter C. Jones* and *Maurine L. Jones,* for plaintiffs.

*Carton, Gault & Davison,* for defendant.

BUTZEL, C. J. George Rolland, who died on May 7, 1927, by will, duly probated, left the north 40 feet of lot 6 of block 1, Fay's addition to the city of Flint, Michigan, to his son Samuel Rolland and Ella Rolland, the latter's wife. He devised the balance of lot 6, on which the homestead stood, to

his wife Cora Rolland, during her natural life, and upon her death to his sons Samuel and Henry Rolland, share and share alike. He imposed the obligation on them to care for Cora Rolland, the life tenant during her lifetime. Cora Rolland continued to live in the homestead for two years and then made her home with Samuel Rolland, defendant, until her death on January 26, 1938. During her lifetime Samuel collected the rents from the homestead property as her agent according to his claim. After her death, he continued to collect the rents until November 3, 1939, when the State acquired absolute title to all of lot 6 because of nonpayment of taxes. The total amount of the rent thus collected from the homestead property in the period of over 21 months since her death aggregated $307.50.

From 1929 to and including 1932, lot 6 was assessed as one parcel, but in 1932 the north 40 feet was assessed to defendant; and the balance of the lot on which the homestead stood to Cora Rolland, the life tenant. Taxes assessed against the entire lot 6 were not paid for the years 1929, 1930, and 1931, and taxes assessed against the entire lot with the exception of the north 40 feet for the year 1935, also were not paid. The aggregate amount of unpaid taxes for all these years totaled $650. Taxes for the years 1936, 1937, 1938, and 1939 also were not paid, but were cancelled by the subsequent tax sale in 1938.

In May, 1938, the entire lot 6 was sold for the unpaid taxes for the years 1929, 1930, and 1931. The homestead property was sold at the same sale for the unpaid tax of 1935. There was no redemption from any of these sales and on November 3, 1939, the title to the property became absolute in the

State. The entire lot 6 was sold at "scavenger" sale by the State land office board in March, 1941.* Defendant Samuel Rolland matched the highest bid made for the property by another prospective purchaser and a contract was entered into with him. Subsequently he received a deed from the State of Michigan.

Henry Rolland died intestate on March 24, 1935, leaving as his heirs Sarah Rolland, widow, Thomas H. Rolland, son, and Lillian Rolland, daughter. Lillian died intestate leaving as her heirs, her mother, Sarah Rolland, and her husband Harry Brown, both of whom with Thomas H. Rolland are plaintiffs herein. Plaintiffs admit that Samuel Rolland paid the expenses of the last sickness and funeral expenses aggregating $330.60. Since defendant acquired the property, he collected rentals amounting to $592.50 and expended $504.83 for repairs and taxes. The property has been sold by him on contract. Plaintiffs claim that it was the duty of Samuel Rolland as agent for his mother, the life tenant, to pay the taxes and that by fraud and neglect on his part he permitted the taxes to become delinquent, allowing the sale of the property for nonpayment of taxes to follow. There is no showing of any fraud whatsoever.

There is no showing that Henry Rolland, the cotenant, either offered to pay any taxes or contributed or failed to contribute to the mother's support. As agent for the mother who held a life interest, it was the duty of Samuel Rolland to account to her for the rentals and it was her duty to pay the taxes or order them paid. Defendant was no more liable than Henry Rolland to pay the

* See Act No. 155, Pub. Acts 1937, as amended by Acts Nos. 29, 244, 329, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 3723–1 et seq., Stat. Ann. 1940 Cum. Supp. § 7.951 et seq.).—REPORTER.

taxes during the life of the life tenant; they both were coremaindermen. When defendant Samuel Rolland purchased the property from the State of Michigan after the State's title became absolute, the cotenancy between him and plaintiffs had already become terminated when the State of Michigan acquired title at tax sale. Plaintiffs had the same right as defendant to bid at the scavenger sale or match the bid within a specified time. There is no claim that Samuel Rolland fraudulently represented that the taxes had been paid or had covenanted with Henry Rolland to bear the tax burden. In *Meltzer* v. *State Land Office Board,* 301 Mich. 541, 547, we said:

"In the case at bar, the Newtons purchased from the State after the State's title had become absolute. They come within the exception laid down in *Page* v. *Webster,* 8 Mich. 263 (77 Am. Dec. 446), and recognized in *Butler* v. *Porter,* 13 Mich. 292. We are not here called upon to consider a suit between two former co-owners, which might arise in an ejectment action by one former cotenant against another (*Dubois* v. *Campau,* 24 Mich. 360). William Fox and wife are not parties in interest in the case at bar. When the State's title became absolute on November 29, 1939, the original title came to an end, a new chain of title was started. *Krench* v. *State of Michigan, supra* [277 Mich. 168]; *Rathbun* v. *State of Michigan, supra* [284 Mich. 521]. Fox and wife ceased to have any more interest in the land than any stranger to the title. They merely had the privilege granted by the State land [office] board act to acquire title by meeting the highest bid during the 30-day period after the scavenger sale. This was not a present vested right or a present interest. *James A. Welch Co., Inc.,* v. *State Land Office Board,* 295 Mich. 85; *Stickler* v. *State Land Office Board,* 297 Mich. 271."

Also, see *Koenig* v. *Koenig,* 311 Mich. 12, in which this court held that an ordinary cotenant does not purchase for the benefit of another ordinary cotenant without special circumstances. We find no such special circumstances in the present case, nor do we find *Jacobsen* v. *Nieboer,* 299 Mich. 116, relied on by plaintiffs, is pertinent.

· The judge in his decree awarded plaintiffs their proper shares in the amount collected by defendant during the period intervening between the date of the death of the life tenant and the acquisition of the property by the State. He held that no contractual or trust relationship existed between plaintiffs and defendant, and that plaintiffs have no interest in the property.

The decree is affirmed, with costs to defendant.

CARR, SHARPE, BOYLES, REID, NORTH, and STARR, JJ., concurred. BUSHNELL, J., took no part in the decision of this case.