ZIRKALOSO *v.* PARSONS.

PARSONS *v.* ZIRKALOSO.

1. TAXATION—NONPAYMENT OF TAXES—TITLE—STATUTES.

Provisions of statute in effect at time sale for nonpayment of taxes was held to apply insofar as such sale affects title to property so sold, not subsequent amendments which would give different rights to parties involved, notwithstanding the assertion of such rights was made long after the subsequent amendment became effective (PA 1937, No 155, § 5, as amended by PA 1939, No 244 only).

2. SAME—NONPAYMENT OF TAXES—TITLE—STATUTES—AMENDMENTS.

Provision of so-called scavenger act in effect at time absolute title to land was conveyed to State by auditor general with right of redemption to municipality where located and which exercised the right and conveyed land to land contract purchaser when he paid the taxes for which the land had been sold to the State and received an absolute title was not affected by subsequent amendment of the act whereby such purchaser would have acquired a title that would have been subject to outstanding liens against it revived by restoration to private ownership (PA 1937, No 155, as amended by PA 1939, No 244 and PA 1941, No 363).

REFERENCES FOR POINTS IN HEADNOTES

[1] 51 Am Jur, Taxation § 1126.
[2] 51 Am Jur, Taxation § 1127.

3. SAME—LAND CONTRACT PURCHASER—TAX SALE—TITLE.
　　Successor in interest of land contract vendor who had represent-
　　ed to purchasers that taxes for year 1936 had been paid, lost
　　all claim of title to the land, where such taxes were not paid
　　and land was deeded to State for such nonpayment, the title
　　acquired by the purchaser through cooperation of municipality
　　where the lands were located having been effected without re-
　　establishment of vendor's rights (PA 1937, No 155, as
　　amended by PA 1939, No 244).

Appeal from Wayne; Fitzgerald (Neal), J. Submitted October 18, 1957. (Docket Nos. 80, 81, Calendar Nos. 47,458, 47,459.) Decided March 4, 1958. Rehearing denied April 14, 1958.

Land contract foreclosure proceedings by Arthur P. Zirkaloso and Frances N. Zirkaloso against Albert D. Parsons and Mary S. Parsons, with commissioner's judgment appealed to circuit court.

Bill by Albert D. Parsons and Mary S. Parsons against Arthur P. Zirkaloso and Frances N. Zirkaloso to enjoin foreclosure of land contract and to determine title to property purchased from State free from claim of prior titleholders.

Cases heard together. Decree for chancery plaintiffs in first instance with subsequent decree dismissing bill. Chancery plaintiffs appeal. Reversed and remanded for entry of decree for appellants.

Victor H. Wehmeier, for appellants.

Edward P. Frohlich, for appellees.

KELLY, J. Parsons, by land contract (November, 1937), purchased from one Mabel Reaume, a lot in the township of Taylor, Wayne county, Michigan. In the following June (1938), he purchased another lot from the said Mabel Reaume. Zirkalosos are Mabel Reaume's successors in title.

Both land contracts provided that the purchaser pay all taxes subsequent to the date of execution and the seller pay all taxes before said date. Zirkalosos' previous owner of title (Mabel Reaume) failed to pay the 1936 taxes. The succession of events after said failure that led up to the litigation in the circuit court is concisely and accurately set forth in the trial court's opinion, in the following language:

"In May of 1939, the State of Michigan bid in this property for failure to pay this 1936 tax. In November, 1940, after the period of redemption had expired, title was taken by the State of Michigan. In the normal course of events, under the law as it then was written, the property would have gone into the scavenger sale, to the end that title could be returned to private ownership. However, under a special provision in the law as it existed at that time, Taylor township, a municipality, requested that this land be withheld from the scavenger sale, which request was granted.

"During the period that this land was being withheld at the request of Taylor township, Albert D. Parsons paid the delinquent tax and requested that the township of Taylor redeem the said property. This request was granted, and on April 3, 1941, Albert D. Parsons received a deed from the State of Michigan conveying title to him. At the time Parsons received this deed from the State of Michigan there was due and owing from him to the vendors on the land contract, or their assigns, a substantial sum, approximately $3,000.

"The Zirkalosos, on the 11th of February, 1954, brought suits before the circuit court commissioner for the county of Wayne for summary possession of the premises based upon the forfeiture of said land contracts for nonpayment. Judgments were entered in favor of the vendors Zirkaloso, and the cases involving both contracts are before this court on appeal.

"Albert D. Parsons and his wife have brought a bill of complaint praying that the decree be entered declaring title to the premises covered by the said deed from the State of Michigan to the Parsons be vested in them, Albert D. Parsons and Mary S. Parsons, his wife, free from any and all claims of the respondents Zirkaloso. The cause is in the nature of a bill to quiet title."

Two opinions were filed by the court. In his first opinion (No. 1) the court found for Parsons, and in his second opinion (No. 2) the court found for Zirkalosos.

In opinion No. 1 (October 28, 1955, in favor of Parsons) the court stated:

"When the property was sold to the State in May, 1939, for nonpayment of the 1936 taxes, the owner in fee, Zirkalosos' predecessor in title, had 18 months to redeem. This right did not expire until some time in November, 1940. No action was taken by the titleholder during that period. The result of this failure to act was that title vested absolutely in the State of Michigan, and no further right to redeem existed. This is pointed out in *Oakland County Treasurer* v. *Auditor General,* 292 Mich 58.  *  *  *

"After his failure to redeem, before November, 1940, the predecessor of the defendant in this cause became a stranger to the title with no vested rights. *  *  *.

"On November 3, 1939, plaintiff ceased to have any more interest in the title to the lands described in its petition than any stranger to that title.  *  *  *

"When the State of Michigan acquired title to the property as the result of the tax sale, a new chain of title was started. *Krench* v. *State of Michigan,* 277 Mich 168."

In opinion No. 2 (May 22, 1956, in favor of Zirkalosos) the court said:

"Since the original opinion was written in this cause, it has been called to the attention of the court

for the first time that the Supreme Court of Michigan, in the case of *Oakland County* v. *State Land Office Board*, 296 Mich 368, made a further pronouncement in relation to section 5, PA 1939, No 244.    *   *   *

"Originally this court, following the language used by the Supreme Court in the case of *Oakland County Treasurer* v. *Auditor General*, 292 Mich 58, was led to believe that in such a situation an absolute title having vested in the State; and, in the words of the court, a new chain of title having started; that the municipality, or anyone redeeming through it, would have a right to a fee simple deed. However, in view of the holding in   *   *   *   [*Oakland County* v. *State Land Office Board, supra*], we cannot see why one redeeming through a municipality under section 5 of the 1939 act would be entitled to any better deed than the municipality itself could have procured from the State. It seems obvious that any deed secured from the State must be either a deed in fee simple, or a redemption deed. It having been held that the municipality is not entitled to a deed in fee simple, it must follow that it is entitled to a redemption deed. There is no other kind of deed.

"Therefore, this court must reverse its previous opinion and hold that the deed secured by the plaintiffs Parsons in this cause was merely a redemption deed."

The statute involved is known as the scavenger act (PA 1937, No 155).*   The section of said act applicable to the present case is the amendment to section 5, which became effective on June 15, 1939 (PA 1939, No 244 [CLS 1940, § 3723-5, Stat Ann 1940 Cum Supp § 7.955]), and which reads:

"Any municipality may at any time prior to the sale provided for in section 7 of this act make application to the State land office board for the with-

* See, currently, CL 1948 and CLS 1956, § 211.351 *et seq.* (Stat Ann 1950 Rev and Stat Ann 1955 Cum Supp § 7.951 *et seq.*).—RE- PORTER.

holding of the lands in said application from the said sale, for a period of 1 year from the date the title vests in the State, and the said State land office board shall withhold such lands from said sale, which lands shall be held subject to the lien of the city for delinquent taxes and special assessments. In the event the taxes on said lands included in said application are not redeemed or paid by said municipality, such lands shall be offered for sale at the next succeeding sale held the following year as provided in section 7 of this act the same as though said application had not been made and the proceeds of such sale paid pro rata to such municipality as provided in section 10 of this act.

"The term 'owner' as used in this act shall mean the owner in fee, mortgagee, land contract vendee, or one having a substantial interest by way of actual investment in the property, priority to be given the one having the largest financial investment in the property.

"The term 'municipality' as used in this act shall mean any county, city, village, township or school district. The term 'taxing unit' as used in this act shall include any municipality as herein defined and any other taxing unit in this State."

In opinion No. 1 the trial court commented upon this section 5 as follows:

"It will be noted that section 5, as originally enacted provided for redemption with title to go to the owner. However, section 5 as amended is very different, providing that the municipality only shall have the right to redeem. There is no provision at all for redemption by the owner or anyone else; although the amendment does state that the term 'owner' as used in the act shall mean the owner in fee, the mortgagee, or the land contract vendee."

The legislature that convened in 1941 was not satisfied with the 1939 amendment of section 5, and

again amended said section to provide, in part, as follows:

"No redemption deed issued under the provisions of this section shall be construed to vest in the grantee therein named any title or interest in such lands beyond that which he would have owned, had not title become vested in the State, but such grantee shall be entitled to a lien on such lands, or on such parts thereof or interests therein as were not owned by him, for the amount paid upon such redemption or such portion thereof as may be lawfully charged to such parts or interests, in addition to the lien or other interest before held by such grantee; which lien may be enforced in any court of competent jurisdiction as in other cases of liens upon lands, with interest thereon at 6 per cent per annum from the date of such payment. Such deed shall operate to revive all titles, liens and encumbrances, with their respective priorities, as the same would have existed had not the title become vested in the State; subject to the lien of the grantee therein named as hereinabove set forth." PA 1941, No 363.

This 1941 amendment is not controlling in the present appeal. The 1939 amendment prevails. It may be interesting to note that this section 5 was amended 3 times after 1939 by PA 1941, No 363; PA 1943, No 159; PA 1945, No 321, and then it was repealed completely by PA 1951, No 167.

Appellees contend that the 1941 amendment was adopted by the legislature so that its legislative provisions would conform with this Court's decision in *Oakland County* v. *State Land Office Board,* 296 Mich 368. We cannot agree with this conclusion.

The trial court reversed his first decision because of the *Oakland County* v. *State Land Office Board Case, supra.* A characteristic, clear and concise statement by Justice WIEST in that case is as follows (pp 370, 371, 374):

"By virtue of sale for taxes in 1938, title to the property of the Masonic Temple Association of Pontiac vested in the State of Michigan under the terms of PA 1937, No 155, as amended by PA 1939, No 244 (CLS 1940, § 3723–1 *et seq.,* Stat Ann 1940 Cum Supp § 7.951 *et seq.*).

"The county of Oakland desiring the property for public purposes, the board of supervisors took action to acquire the same and, to that end, on February 10, 1940, tendered the State officials the sum of $55,-654.87, that being the amount of the 1938 State bid for the property, plus interest at 1% per month to and including the time of tender, and requested that the premises be withheld from the so-called 'scavenger sale' in February, 1941, and that the State officers convey the same to the county in fee. The State officers refused so to deed the property and the county of Oakland seeks our writ of mandamus directing the State officers to accept the tender and execute a deed conveying title to the county in fee.

"In answer the State officers contend:

" 'First: The State concedes that, upon expiration of the period of redemption of lands from the 1938 tax sale, it acquired an absolute title, subject, however, to the provisions of the land office board act, as construed by this Court in *Oakland County Treasurer* v. *Auditor General* (1940), 292 Mich 58.

" 'Second: We also admit that, under the terms of the general property tax law *supra,* the vesting of such an absolute title in the State cancelled all taxes assessed against the land, and the State land office board had control and jurisdiction, subject to the provisions of the act creating that body and defining its powers.

" 'Third: While, it is doubtless true, the county of Oakland, or any other "municipality," possessed the statutory right to have lands withheld from the "scavenger" sale, it is also correct to state, we believe, that the further right, granted by section 5 of the act, to pay the amount of the State's bid at the annual sale in 1938, obtain a deed and acquire the

property for public use, was a privilege strictly in the nature "redemption," an extension of the equity of redemption accorded under the general property tax law, which might be claimed, however, only by municipalities, and not by the owner of the land, *Oakland County Treasurer* v. *Auditor General, supra,* and, as in the case of any other redemption under the general property tax act, such a redemption would be conditioned upon revival of the cancelled tax liens which had accrued in 1936 or subsequent years.

" 'Fourth: In short, the legislature, in enacting section 5 of this statute, did not intend to render it possible for a taxing unit to take undue advantage of any other municipality, or the former owner, or the State itself, and thus drive a hard bargain in obtaining for its exclusive use a valuable piece of property for a low consideration.

" 'It would seem to follow that the deed to which the county would be entitled must in fairness to all concerned merely convey title subject to such tax liens as were levied by assessment subsequent to 1935.' * * *

"The act as amended is ambiguous, and its true sense is to be gathered from a consideration of the evident purpose underlying its somewhat uncertain provisions.

"Title is in the State, it is true, but it is there for a purpose. Previous to the amendment of 1939 the former owner might redeem or match the highest bid at the 'scavenger sale;' but now, it is claimed, the municipality may prevent the former owner of right to bid at a sale by merely paying the State the amount of its bid for the premises and interest, et cetera.

"The act of 1937, as amended by the act of 1939, does not clearly grant plaintiff right to the deed demanded and, for that reason and also because the writ of mandamus is one of grace, the writ is denied.

"No costs."

There was no repudiation of the decision in *Oakland County Treasurer* v. *Auditor General,* 292 Mich 58, in the decision just above quoted (*Oakland County* v. *State Land Office Board, supra*) and, in fact, the only reference to the 292 decision was one of approval. Under said 292 Michigan decision the court correctly stated in his original (No. 1) opinion that "After his failure to redeem, before November, 1940, the predecessor of the defendant in this cause became a stranger to the title with no vested rights. * '* * When the State of Michigan acquired title to the property as the result of the tax sale, a new chain of title was started. *Krench* v. *State of Michigan,* 277 Mich 168."

In 1943 this Court decided an appeal (*Ellison* v. *Hewitt,* 305 Mich 349) that involved sale of property to the State for failure to pay the 1936 taxes. In this case the plaintiff sold on contract certain lands to defendant and represented that "all taxes and assessments heretofore levied upon said premises to and including the 1936 State and county taxes have been paid." The 1936 taxes were not paid and the property was sold at the auditor general's tax sale of delinquent properties and title vested in the State of Michigan. Defendant at the scavenger sale purchased the property. This Court held (pp 352, 353, 355).:

"Seemingly, on the theory that there was a confidential relation existing between plaintiff vendor and defendant vendees, the circuit judge reached the conclusion and recited in his decree that 'said purchase of said above-described real estate by said defendants inures to the benefit of their contract vendor, Elsie Ellison, plaintiff herein; and that defendants held the title to said real estate and property in trust for the said Elsie Ellison, plaintiff herein.'

"Under the facts presented by this record we think

the above conclusion cannot be sustained, and that the decree entered must be vacated.

"No case is cited in support of plaintiff's contention which in some of its essential factual respects does not differ from the instant case. At the inception of this transaction there was no semblance of a confidential relation between the parties. They were dealing at arm's length as vendor and vendees. They entered into a plain and definite contract in which plaintiff stated the taxes on the land 'to and including the 1936 State and county taxes' had been paid. They had not been paid, nor were they thereafter paid by plaintiff or any other person. Instead it was the default in the 1936 taxes which led to the tax sale through which the State became the absolute owner of the property to the exclusion of both plaintiff and defendants. Thereafter, over a period of months defendants continued in possession merely by sufferance of the State as owner. They were not then holding under plaintiff. This was true when defendants bid at the scavenger sale and later when they received their deed from the State. It is of controlling importance that the taxes of 1936 for which plaintiff's property was sold were not only taxes which defendants were never under obligation to plaintiff or the State to pay, but on the contrary they were taxes that plaintiff expressly recited in her land contract with defendants had been paid. Plaintiff's breach of this contract obligation can hardly be made the basis of now granting her equitable relief.   *   *   *

"Plaintiff finds herself in a regrettable position solely by reason of her own default, and she cannot be heard to say that she should not be bound by the terms of her land contract because she relied upon the skill of the scrivener by whom it was prepared. It seems pertinent to repeat our observation in a recent case of somewhat like character:

"'Admittedly the result in the instant case is unfortunate and harsh; but that circumstance cannot be made a ground for nullifying the effectiveness of

statutory provisions enacted for the purpose of enabling governmental agencies to levy and collect taxes without which the affairs of the State cannot be carried on. The statutory provisions cannot in justice be enforced against one individual in the matter of taxation and relaxed to the extent that they are wholly inoperative as against another individual.' *Pavlovic* v. *Kastner,* 302 Mich 120, 123, 124."

In determining the question herein presented we must keep in mind the following calendar of events:

1935—Fred J. Reaume acquired title.

1936—Tax is not paid.

1937 and 1938—Land contracts executed between Mabel Reaume and Albert D. Parsons.

May, 1939—Premises sold for nonpayment of 1936 taxes, bid in by State.

November 29, 1940—Auditor General conveyed premises to State of Michigan.

December 30, 1940—Mabel Reaume died.

April 3, 1941—State of Michigan conveyed to Albert D. Parsons.

July 17, 1943—Fred J. Reaume conveyed undivided 1/2 interest to Arthur P. Zirkaloso and Frances N. Zirkaloso, his wife.

June 17, 1948—Fred J. Reaume died.

February 11, 1954—Arthur P. Zirkaloso and Frances N. Zirkaloso declared the land contracts forfeited and brought forfeiture proceedings before the circuit court commissioner for Wayne county.

April 16, 1954—Present proceedings brought by Parsons against Zirkalosos.

We agree with the following statement of appellants:

"Assuming for the sake of discussion that there was a redemption it would not inure to the benefit of the Zirkalosos as there was no confidential relation between the parties.   *   *   *

"The question was presented to the trial court as to the effect of the tax sale on the title to the Reaumes. It is Parsons' contention that Reaumes' title in the premises was extinguished when the auditor general conveyed to the State of Michigan on November 29, 1940, and that they or their heirs had nothing to convey to the Zirkalosos. That if the Zirkalosos have no title they cannot maintain the land contract forfeiture proceedings. The trial court did not answer the question."

Appellees admit that appellants hold title by deed from the State. While endeavoring to limit said title to a redemption status, appellees do not place title in Zirkalosos. We do not have in this appeal any conflict of title or right of possession between Taylor township, or Wayne county, and Parsons. Under the 1939 amendment of section 5, which must be determinative of rights in this appeal, we hold that the trial court's first opinion and decree were correct.

Appellants do not ask this Court to determine that they have a fee simple title. Appellants pray for relief as follows:

"Plaintiffs and appellants respectfully ask that the decree dated September 19, 1956, dismissing the bill of complaint be vacated and the original decree dated February 3, 1956, be reinstated, to the effect that the title to the premises contained in the deed to Parsons from the State land office board be decreed to be free from all claims of the defendants and appellees Arthur P. Zirkaloso and Frances N. Zirkaloso, his wife, and that the judgment of the circuit court commissioner be reversed and the said defendants and appellees be enjoined from prosecuting further the said summary proceedings and from taking any other steps to recover possession of said premises."

Appellants' prayer of relief is granted; the decree of the trial court dated September 19, 1956, is re-

versed and the case is remanded for reinstatement of the original decree of the trial court of February 3, 1956. Costs to appellants.

DETHMERS, C. J., and CARR, SMITH, BLACK, EDWARDS, and VOELKER, JJ., concurred.

KAVANAGH, J., took no part in the decision of this case.