JAMES A. WELCH CO., INC., v. STATE LAND OFFICE BOARD.

1. TAXATION—DELINQUENT TAXES — DECREES — STATUTES — VESTED RIGHTS.
   Decree, entered pursuant to statutory provisions relative to sale of land for delinquent taxes, which set the period of redemption, cannot be said to vest rights in the tax-delinquent debtor as any rights such party has arise by virtue of statute and, being remedial in nature, are subject to abridgment by the legislature (1 Comp. Laws 1929, § 3467, as amended by Act No. 325, Pub. Acts 1937; Act No. 155, Pub. Acts 1937, as amended by Acts Nos. 29, 244, 329, Pub. Acts 1939).

2. SAME—DELINQUENT TAXPAYER—VESTED RIGHTS—INTEREST—REDEMPTION.
   One who owes delinquent taxes has no vested right to have the interest thereon remain unchanged nor to have the time of sale or period of redemption continue the same as it existed during the period of delinquency.

3. SAME—PURPOSE OF STATE LAND OFFICE BOARD ACT—COLLECTION OF PART OF DELINQUENT TAX—RESTORATION TO TAX ROLLS.

The primary and inducing purpose of the State land office board act providing for public auction of lands to which the State had acquired title upon sale for delinquent taxes is to secure a portion of the unpaid taxes, rather than nothing, and to restore the lands to a taxpaying basis, instead of supinely allowing them to accumulate tax delinquencies with no hope of ever recovering them (Act No. 155, Pub. Acts 1937, as amended).

4. SAME—STATE LAND OFFICE BOARD ACT—WITHHOLDING LANDS FROM SALE.

The State land office board act, in granting municipalities the right to request that lands be withheld from so-called scavenger sale for one year on request of municipalities *held,* not an unconstitutional discrimination or classification (Act No. 155, Pub. Acts 1937).

5. SAME—REDEMPTION—AMENDATORY STATUTE.

Statute amending the general property tax law by providing that absolute title to lands bid in by the State should vest in the State upon expiration of the statutory period of redemption is not unconstitutional as an *ex post facto* law or one impairing the obligation of contract because, previously, the lands had to be delinquent in taxes for five years before the State could acquire title as the right of redemption is but a statutory right and the amendment merely affected the remedy of a delinquent taxpayer (Act No. 114, Pub. Acts 1937, amending Act No. 206, Pub. Acts 1893).

6. SAME—WITHHOLDING LANDS FROM SCAVENGER SALE—MUNICIPAL CORPORATIONS—STATUTES.

Amendatory act authorizing municipalities to make applications for withholding lands within their boundaries from the so-called scavenger sale which became effective before the State acquired title to the land to be sold at that sale operated prospectively, not retrospectively, as to the first scavenger sale (Act No. 155, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939).

7. SAME—ABSOLUTE TITLE IN STATE—DISPOSITION OF STATE-OWNED LANDS.

Upon the vesting in the State of the absolute title of tax-delinquent lands, they cease to be amenable to State tax laws,

as State-owned land is not taxable, and can only be disposed of on conditions imposed by the legislature (Act No. 155, Pub. Acts 1937, as amended).

8. SAME—STATE-OWNED LANDS SOLD FOR DELINQUENT TAXES—SCAVENGER SALE—RIGHT OF FORMER OWNER TO MATCH BID.

When the State acquires absolute title to tax-delinquent land the former owner thereof has no more interest in the title than any stranger to the title; hence the statutory right of such former owner to match the bid of a purchaser at scavenger sale of such land by the State is not a condition upon which the State acquired title but is only a right contingent upon a sale of the property being made (Act No. 155, § 7, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939).

9. MANDAMUS — QUESTIONS REVIEWABLE — PARTIES — TAXATION — WITHHOLDING LANDS FROM SCAVENGER SALE.

In mandamus proceeding by former owner of land to which State had acquired absolute title through sale for delinquent taxes to compel State to proceed to sale thereof at scavenger sale after city within which the land was located had made an application to withhold such lands from sale, plaintiff was not concerned with questions as to whether withholding application was timely made, whether or not it improperly included certain lands, or whether city could withdraw certain parcels from the withholding application, since such matters concerned city and State land office board only (Act No. 155, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939).

10. TAXATION—INDIRECT REDEMPTION OF TAX-DELINQUENT LANDS WITHHELD FROM SCAVENGER SALE.

Former owner of tax-delinquent lands to which State had acquired absolute title was not prejudiced by fact that city applied to have such lands withheld from scavenger sale as such former owner may indirectly redeem its property from the State through the intervention of the city by paying up the delinquent taxes on the property (Act No. 155, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939).

11. COSTS—MANDAMUS—RECENT DECISION OF CONTROLLING CASE.

No costs are allowed in mandamus proceeding where case largely controlling of questions raised was not decided until application for writ had been made.

Mandamus by James A. Welch Company, Inc., a Michigan corporation, to compel the State Land Office Board to proceed with the 1940 sale of State lands in the city of Flint, Michigan, title to which was acquired November 3, 1939. Submitted August 27, 1940. (Calendar No. 41,136.) Writ denied October 7, 1940.

*A. J. Michelson,* for petitioner.

*Thomas Read,* Attorney General, *Edmund E. Shepherd* and *John Panchuk,* Assistants Attorney General, for defendant.

*Farley & Elliott, amici curiae.*

CHANDLER, J. Plaintiff was the owner of several parcels of real estate located in the city of Flint, which, on May 3, 1938, were sold for delinquent taxes under a decree of sale entered in the circuit court for the county of Genesee, in chancery, on April 23, 1938. The statutory right of redemption of said parcels of land was not exercised by plaintiff, and as a result, the title absolute thereto vested in the State of Michigan on November 3, 1939.*

Pursuant to statutory regulations, and after due notice, the State land office board, on February 13, 1940, commenced a sale of State lands in Genesee county acquired through tax sales. On February 12, 1940, the day preceding the commencement of the sale, the city of Flint filed an application with said State land office board to withhold from the sale all lands in the city of Flint to which title had become vested in the State of Michigan by reason of tax sales and the applicable provisions of Act No. 155, Pub. Acts 1937, as amended by Acts Nos.

---

* 1 Comp. Laws 1929, § 3467, as last amended by Act No. 325, Pub. Acts 1937.—REPORTER.

29, 244, and 329, Pub. Acts 1939 (Comp. Laws Supp. 1940, §§ 3723-1–3723-14, Stat. Ann. §§ 7.951–7.964).

The land office board on February 13th adopted the following resolution:

"Whereas, a decision of the State Supreme Court concerning the procedure in withholding properties from the auction sale was handed down on February 10th, and

"Whereas, Act No. 155, § 5, Pub. Acts 1937, as amended, permits withholding applications to be filed at any time prior to the date of sale,

"Therefore, be it hereby resolved that applications by municipalities for withholding properties from sale be accepted by this board, or any duly appointed agent hereof, up to the close of business of the day prior to the day on which parcel proposed to be withheld is scheduled to be offered for sale."

On February 13 and 14, 1940, plaintiff filed with the Flint city commission and the land office board a written protest to the effect that it repudiated any authority assumed by any committee of the city commission to request the State land office board to withhold any lands from said sale on its behalf. It stated in the protest:

"The undersigned states that he does not desire said lands withheld from said land sale of 1940, and further states that he has no intention of redeeming said lands through the city of Flint if they are withheld from said land sale, or of redeeming said lands through any other taxing unit."

The protest contained a request that if the city of Flint desired any of the lands withheld with the intention of acquiring the same for public purposes, the city commission designate specifically the properties it desired to withhold from sale and to be ac-

quired for public purposes and also state the nature of the public purposes on account of which said lands were to be withheld from sale. In the protest, plaintiff claimed its right to become a purchaser of the lands formerly owned by it at the 1940 tax sale, claiming a right superior to the right of the city of Flint to withhold the lands from the sale.

On February 27, 1940, the city of Flint filed with the land office board an application to withdraw from its withholdings, theretofore made, certain lands, including one parcel of land formerly owned by plaintiff, and asked that the same be allowed to go to immediate sale in accordance with the provisions of Act No. 155, Pub. Acts 1937, as amended. This application was rejected by the board on March 4, 1940.

After the foregoing proceedings, plaintiff filed with this court its petition for a writ of mandamus to require the State land office board to proceed forthwith with the advertised 1940 State land sale of all lands in the city of Flint, or, in the alternative, to direct said board to proceed forthwith with the advertised 1940 State land sale in the city of Flint and offer for sale all lands withdrawn by the city of Flint from its withholding application.

Plaintiff insists that it is entitled to the relief sought in its petition because:

1. It "acquired the vested right by virtue of the decree of the circuit court for the county of Genesee, Michigan, entered on the 23d day of April, 1938, to have its former lands offered for sale at the 1940 State land sale, and by said decree acquired the right or option to repurchase the same at said sale, subject only to withholding rights of '*municipalities which do not return their delinquent taxes to the county treasurer.*' These vested repurchase rights could not be impaired by subsequent legislation ex-

tending to *all* municipalities, including the city of Flint, the right to withhold lands from the 1940 State land sale.''

2. ''Act No. 244, Pub. Acts 1939, amending Act No. 155, § 5, Pub. Acts 1937, extending to all municipalities the right to withhold lands from the State land sale should be construed prospectively and not retrospectively, so as not to impair vested rights obtained under court decrees in tax sale proceedings entered before the amendment.''

The foregoing contentions of plaintiff are in direct conflict with the recent decision of this court in the case of *Baker* v. *State Land Office Board,* 294 Mich. 587, 601. In the opinion in that case, we said:

''The decree in question was entered pursuant to the tax statutes in effect at the time, and for the purpose of carrying out the provisions of such law. Such decree cannot be said to vest rights in the tax-delinquent debtor. The claimed rights arose only out of the provisions of the statute governing sales for tax delinquency; and such rights are subject to abridgment by the legislature, for the reason that they are remedial in their nature. One who owes delinquent taxes has no vested right to have the interest thereon remain unchanged, *Webster* v. *Auditor General,* 121 Mich. 668, nor to have the time of sale or period of redemption continue the same as it existed during the period of delinquency. *Muirhead* v. *Sands,* 111 Mich. 487. Nor do vested rights arise out of redemption provisions of a decree entered pursuant to a remedial statute governing tax sales.''

In the *Baker Case,* ''the decree in question'' is the same as the one in the instant case as both came from Genesee county and involve lands in the city of Flint.

We again quote from the *Baker Case:*

"It is claimed that the act arbitrarily discriminates between rights and privileges of former owners, rights of municipalities, and strangers to the title, who bid at such sales. If the former owner matches the bid of another, he is awarded the right of purchase. The State receives as much from one as it would from the other. It might well be the opinion of the legislative body that the former owner, once he was relieved of the weight of accumulated obligation, had a greater interest in maintaining the land as a taxpaying property than an outsider. Furthermore, there would seem to be no illegal consideration in granting municipalities a year's delay in order that they might acquire properties incumbered by taxes owed to them. The superiority of their interest and the public interest warrants such consideration; and to all of such contentions, it might well be answered that the primary and inducing purpose of the legislation was to secure a portion of the unpaid taxes, rather than nothing, and to restore lands to a taxpaying basis, instead of supinely allowing them to accumulate tax delinquencies with no hope of ever recovering them. In accordance with the foregoing, it is our determination that there has been no showing of unconstitutional discrimination or classification in the provisions of Act No. 155, Pub. Acts 1937; that Act No. 206, Pub. Acts 1893, as amended by Act No. 114, Pub. Acts 1937 (as amended, see Comp. Laws Supp. 1940, §§ 3459, 3459-1, Stat. Ann. 1940 Cum. Supp. §§ 7.112, 7.112[1]), does not contravene either the State or Federal Constitution as an *ex post facto* law, or impair the obligations of contract; and that the amending statutes, Act No. 244, Pub. Acts 1939, Act No. 325, Pub. Acts 1937, and Act No. 329, Pub. Acts 1939, are not invalid for the reasons as set forth and contended by petitioner."

The effective date of Act No. 244, Pub. Acts 1939, was June 15, 1939. This amendatory act extended authority to *all* municipalities to make applications for withholding lands within their boundaries from the so-called scavenger sale. The authority of the State land office board to receive applications for withholding lands from sale did not arise until after the title in the State became absolute, which was November 3, 1939. We must hold, therefore, that so far as the 1940 sale of lands is concerned, the operation of said Act No. 244 was prospective and not retrospective. It was in effect before any rights could possibly have accrued under the 1940 scavenger sale.

Defendant, in its discussion of the questions involved, correctly contends:

"Upon the vesting of title absolute in the State, the State's sovereign power of imposing and enforcing the collection of taxes thus reached its completion and fruition, and the particular parcels of land ceased to be amenable to the tax laws of the State, as State-owned land is not taxable. To counteract any mortmain tendencies, the State has always had remedial legislation in one form or another providing for the sale and disposition of land acquired for nonpayment of taxes. Such land can be disposed of only on conditions prescribed by the legislature. *Krench* v. *State of Michigan,* 277 Mich. 168."

On November 3, 1939, plaintiff ceased to have any more interest in the title to the lands described in its petition than any stranger to that title. The State, however, granted to it a right or privilege for a 30-day period after the sale of the land at the so-called scavenger sale, to acquire title by meeting the highest bid. Act No. 155, § 7, Pub. Acts 1937,

as amended. The purchaser at this sale makes his bid subject to the statutory privilege or right of the former party in interest to meet the highest bid. The right of plaintiff to meet the highest bid is not a condition upon which the State acquired title absolute to the lands in question. This privilege could not under any circumstances accrue to plaintiff or become a vested right in it until a sale has been made by the State to the highest bidder. It is only upon the acceptance by the State of the highest bid that the statutory right of the former owner to meet such highest bid becomes operative and permits the former owner to acquire the title in the manner provided by the statute. Until such sale, it is not a present vested right or a present interest; it is a mere contingent right which may or may not happen.

Plaintiff further contends:

3. "If the city of Flint had the right to withhold lands from the 1940 State land sale, the city of Flint did not make timely application to withhold such lands from said sale."

4. "If the city of Flint had the right to withhold State lands in the city of Flint from the 1940 State land sale, the city of Flint had the right to withhold only such lands as it contemplated acquiring for public use, or which it was requested to withhold by the former owner. Its arbitrary application to withhold all State lands from the 1940 sale was illegal."

5. "If the city of Flint had such withholding rights and made timely application to withhold from the 1940 State land sale all State lands in the city of Flint, it had the right to amend and modify its request so as to permit the sale at the 1940 State land sale of certain lands withdrawn from said withholding application."

In view of what we have heretofore said, we must hold that this plaintiff is not and cannot be concerned with the foregoing questions any more than any stranger to the title to the lands involved. If there is any merit at all to these last three questions raised by plaintiff, it involves controversies between the municipality and the State land office board and the plaintiff would not be a proper party thereto.

Plaintiff is not prejudiced by the withholding of lands, which it formerly owned, by defendant from the scavenger sale, because under the authority of *Oakland County Treasurer* v. *Auditor General,* 292 Mich. 58, it may indirectly redeem its property from the State through the intervention of the city of Flint by paying up the delinquent taxes on said property.

The writ of mandamus is denied, but in view of the fact that the case of *Baker* v. *State Land Office Board, supra,* had not been determined at the time this application was filed, no costs will be allowed.

BUSHNELL, C. J., and SHARPE, NORTH, MCALLISTER, WIEST, and BUTZEL, JJ., concurred. The late Justice POTTER took no part in this decision.