LEWIS v. MATTHEWS.

1. TAXATION—SCAVENGER SALE—PURCHASERS—CITY CLERK.
    In suit to set aside conveyance by State land office board to
    purchaser at so-called scavenger sale and conveyance by him
    to his brother and latter's son, finding of trial court that
    purchaser and his brother, then clerk of the city in which
    the premises were located, did not have anything to do with
    or control over the sale and that information relative thereto
    was not procured by virtue of the brother's official capacity
    as city clerk *held*, supported by record which does not con-
    tain any evidence of fraud or misconduct on the part of the
    purchaser or his brother (Act No. 155, Pub. Acts 1937, as
    amended).
2. SAME—SCAVENGER    SALE—PURCHASERS—CITY    CLERK—PUBLIC
    ·POLICY.
    Conduct of clerk of city in which premises were located in acting
    as agent for his brother, the purchaser of property at so-
    called scavenger sale of land by the State land office board,
    and then joining with his son in purchasing property from
    the brother did not violate any rule of public policy where
    such parties had nothing to do with or control over conduct of
    sale, information relative thereto was not procured by virtue
    of city clerk's official capacity, and there is no showing of
    fraud or misconduct on the part of the purchaser or the city
    clerk (Act No. 155, Pub. Acts 1937, as amended).
3. SAME—SCAVENGER    SALE—IRREGULARITY—PURCHASER'S    AGENT—
    DEPOSIT OF MONEY—TIME.
    Claim of irregularity in sale of premises by State land office
    board because party present at sale made bid for himself and
    not as agent of purchaser and did not deposit money within
    24 hours was not sustained where record shows party present
    made bid for purchaser and that purchaser deposited the full
    amount of the bid with the board on the same day (Act No.
    155, Pub. Acts 1937, as amended).
4. SAME—STATE-OWNED LANDS SOLD FOR DELINQUENT TAXES—SCAV-
    ENGER SALE—RIGHT OF FORMER OWNER TO MATCH BID.
    When the State acquires absolute title to tax-delinquent land
    the former owner thereof has no more interest in the title

than any stranger to the title; hence the statutory right of any former owner to match the bid of a purchaser at scavenger sale of such land by the State is not a condition upon which the State acquired title but is only a right contingent upon a sale of the property being made (Act No. 155, § 7, Pub. Acts 1937, as amended).

5. SAME—SCAVENGER SALE—FORMER OWNER'S RIGHT TO MATCH HIGH BID—TIME.
   Former owner of land to which State had acquired absolute title through sale for delinquent taxes who failed to match the bid within 30 days from day property was sold by State land office board at public auction or so-called scavenger sale was precluded thereafter from equitable relief by way of setting aside conveyances made pursuant to such sale (Act No. 155, § 7, Pub. Acts 1937, as amended).

Appeal from Macomb; Holland (H. Russel), J., presiding. Submitted April 15, 1942. (Docket No. 63, Calendar No. 41,921.) Decided May 18, 1942.

Bill by Fred D. Lewis, individually and as administrator of the estate of Charles E. Lewis, deceased, against Joseph H. Matthews and others to set aside a sale of premises made by the State Land Office Board. Bill dismissed. Plaintiff appeals. Affirmed.

*Thomas A. Jacques* (*R. W. Mosgrove* and *Charles W. Babcock,* of counsel), for plaintiff.

*Nunneley & Nunneley,* for defendants.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Peter E. Bradt* and *Daniel J. O'Hara,* Assistants Attorney General, for State Land Office Board.

SHARPE, J. This is a chancery suit to set aside the sale of certain premises made by the State land office board under date of March 20, 1940.

The material facts are as follows: Plaintiff Fred D. Lewis and wife purchased certain premises in the city of Mt. Clemens on a land contract in 1926. In 1928, plaintiff was unable to continue the payments on the land contract. He invoked the aid of his father, Charles E. Lewis, who was then living in Ithaca, New York, and as a result, Charles E. Lewis purchased the premises and took title to the same in his own name. Plaintiff and wife continued to occupy the premises as their home.

The last tax paid on the premises was for the year 1929. The property was ordered sold for delinquent taxes, it was bid in by the State, and on November 3, 1939, the title to said property became absolute in the State of Michigan. On March 20, 1940, the premises were offered for sale by the State land office board pursuant to Act No. 155, Pub. Acts 1937, as amended (Comp. Laws Supp. 1940, § 3723–1 *et seq.,* Stat. Ann. 1940 Cum. Supp. § 7.951 *et seq.*); and on that day Joseph H. Matthews, acting for his brother Christian F. Matthews, made the highest bid for the property. The price of the bid was deposited on the same day and a certificate of purchase was executed to Christian F. Matthews. On July 12, 1940, the State of Michigan, through the State land office board conveyed the title to said premises to Christian F. Matthews who subsequently conveyed the premises to his brother Joseph H. Matthews and Ernest Matthews, son of Joseph H. Matthews. It also appears that Charles E. Lewis died on May 20, 1939, and plaintiff Fred D. Lewis was subsequently appointed administrator of his father's estate; that on the date of the sale Joseph H. Matthews was the clerk of the city of Mt. Clemens; and that Christian F. Matthews was a practicing attorney and as such was consulted from time to time by one Brandenburg who was connected with the sale of such property in Macomb county.

Fred D. Lewis, individually and as administrator of the estate of Charles E. Lewis, filed a bill of complaint to set aside the above-mentioned conveyances and alleged that the deceased Charles E. Lewis had an investment in the premises of approximately $6,500; that the defendant Christian F. Matthews acquired the premises for $925; and that Christian F. Matthews was an agent or attorney for the State land office board at the time of the sale of the property. In an amended bill of complaint it is alleged that Christian F. Matthews failed to pay the amount of his bid for said property within 24 hours as is required by the statute governing the sale of said property; and that plaintiff was advised by the State land office board that said premises would be withheld from sale. Plaintiff tendered into court all moneys paid and expenses incurred by defendants. Defendants filed answers denying the charges made by plaintiff. The cause came on for trial and the trial court denied plaintiff any relief.

Plaintiff appeals and contends that the conveyance to Christian F. Matthews, an agent or representative of the State land office board, was void as being against public policy.

The trial court found as a fact:

"Neither Joseph H. Matthews nor Christian F. Matthews had anything to do with or control over the sale of said property. At the time of said sale, to-wit: on March 20, 1940, neither of the parties mentioned were in any wise connected with the State land office board charged with conducting the scavenger sale in Macomb county. * * *

"The information which led Joseph H. Matthews to purchase the premises as [was] not procured from anyone connected with the [State] land office board, nor was it procured as a result of or by virtue of Joseph H. Matthews' official capacity as city clerk."

The record sustains this finding of the trial court. It does not contain any evidence of fraud or misconduct on the part of Joseph H. Matthews or Christian F. Matthews and their conduct in connection with this transaction does not violate any rule of public policy.

Plaintiff next contends that the sale was irregular in that Joseph H. Matthews made the bid for himself and not as agent for Christian F. Matthews and did not deposit the money within 24 hours. The record shows that Joseph H. Matthews was present at the sale and made the bid for Christian F. Matthews; and that on the same day Christian F. Matthews deposited with the State land office board the full amount of the bid.

In the case at bar, plaintiff's rights are well stated in *James A. Welch Co., Inc.,* v. *State Land Office Board,* 295 Mich. 85, where we said:

"On November 3, 1939, plaintiff ceased to have any more interest in the title to the lands described in its petition than any stranger to that title. The State, however, granted to it a right or privilege for a 30-day period after the sale of the land at the so-called scavenger sale, to acquire title by meeting the highest bid. Act No. 155, § 7, Pub. Acts 1937, as amended. The purchaser at this sale makes his bid subject to the statutory privilege or right of the former party in interest to meet the highest bid. The right of plaintiff to meet the highest bid is not a condition upon which the State acquired title absolute to the lands in question. This privilege could not under any circumstances accrue to plaintiff or become a vested right in it until a sale has been made by the State to the highest bidder. It is only upon the acceptance by the State of the highest bid that the statutory right of the former owner to meet such highest bid becomes operative and permits the former owner to acquire the title in the manner pro-

vided by the statute. Until such sale, it is not a present vested right or a present interest; it is a mere contingent right which may or may not happen.''

The failure of plaintiff to match the bid within 30 days of March 20, 1940, precludes his right to any relief.

The decree of the trial court is affirmed, with costs to defendants.

CHANDLER, C. J., and BOYLES, NORTH, STARR, WIEST, BUTZEL, and BUSHNELL, JJ., concurred.