MELTZER v. STATE LAND OFFICE BOARD.

1. TAXATION—TAX SALE—REDEMPTION—DEED TO STATE—TITLE.
   Title to land sold at annual tax sale, bid in by State, unredeemed by any owner and deeded by auditor general to State, is in a new chain and the State became owner of title in fee.

2. SAME—TAX SALE—REDEMPTION—QUITCLAIM DEED BY FORMER OWNER.
   Quitclaim deed by some of former co-owners of realty conveyed nothing to grantees thereunder where executed after State had acquired title in fee by reason of sale for delinquent taxes and failure of any former owner to redeem.

3. SAME—SCAVENGER SALE—ASSIGNMENT OF RIGHT TO BID OR MATCH HIGH BID.
   Grantees under quitclaim deed and attempted assignment of right to bid or match high bid at scavenger sale from some of former co-owners of land to which State had previously acquired title in fee of real estate under statutes relating to sale of land for delinquent taxes did not thereby acquire such right to participate at scavenger sale (Act No. 155, §§ 5, 7, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939).

4. SAME—SCAVENGER SALE—RIGHT TO MATCH HIGH BID—ASSIGNMENT—AMENDATORY STATUTE.
   Under statutes relating to sale of property for delinquent taxes, the right to meet the highest bid at scavenger sale of land to

which the State had acquired title in fee by virtue of deed from auditor general was limited to parties having an interest in the land at the time of the annual tax sale and such right was not assignable at least as to property to which a purchaser became entitled to deed prior to effective date of amendatory act extending right to match bid to assignee of such former owners (Act No. 155, §§ 5, 5a, 7, Pub. Acts 1937, as amended and added by Act No. 244, Pub. Acts 1939, and Act No. 363, Pub. Acts 1941).           •

5. SAME — SCAVENGER SALE — MORTGAGES — CO-OWNERSHIP — COVENANTS.

While a mortgagor who has covenanted to pay taxes cannot take advantage of his failure to do so and defeat mortgage lien by subsequently obtaining title under the scavenger sale, there is no such obligation between co-owners in the absence of a covenant between them relative to payment of taxes (Act No. 155, §§ 5, 7, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939).

6. SAME—SCAVENGER SALE—NATURE OF RIGHT TO MATCH HIGH BID.

When State acquired title in fee to land sold for delinquent taxes, former owners ceased to have any more interest in the land than any stranger to the title, the privilege to meet high bid at scavenger sale not being a present vested right or a present interest prior to the sale (Act No. 155, §§ 5, 7, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939).

7. SAME—SCAVENGER SALE—RIGHT TO DEED—INJUNCTION—ASSIGNMENT.

In suit to enjoin State land office board from issuing a deed to property, sold to plaintiffs who were grantees under a quit-claim deed and assignees of former co-owners under instrument ineffectually attempting to convey a right to redeem land from scavenger sale before it was held, to the other former co-owners who matched bid at scavenger sale, claim of plaintiffs that they made their bid in the name of their grantors and assignors under provision of assignment granting a so-called power of attorney, held, without merit, where plaintiffs did not in fact do so, are the real parties in interest herein, their grantors are not parties hereto, and, if successful, would obtain title in themselves and not their grantors and assignors (Act No. 155, §§ 5, 5a, 7, Pub. Acts 1937, as amended and added by Act No. 244, Pub. Acts 1939, and Act No. 363, Pub. Acts 1941).

8. EQUITY—DISPOSITION OF ENTIRE CASE—REAL PARTIES IN INTEREST.

Quitclaim deed by some of former co-owners of realty and such grantors' assignment of right to redeem at scavenger sale to

be held thereafter but sufficiently prior to time of act amendatory of State land office board statute whereby right to match high bid at scavenger sale was sought to be extended to assignees of former owners was ineffectual to transfer any rights such former co-owners had, and, where such assignees were the only real parties in interest as plaintiffs in suit to enjoin State land office board from issuing deed to other former co-owners, bill will be dismissed as to all defendants in order to dispose of entire matter although motion to dismiss was filed on behalf of State land office board and its members only (Act No. 155, §§ 5, 5a, 7, Pub. Acts 1937, as amended and added by Act No. 244, Pub. Acts 1939, and Act No. 363, Pub. Acts 1941).

9. COSTS—BRIEFS.

No costs are allowed upon affirmance of decree in chancery case against State officers and certain individuals where latter appellee defendants filed no separate brief on appeal.

Appeal from Oakland; Hartrick (George B.), J. Submitted April 9, 1942. (Docket No. 67, Calendar No. 41,929.) Decided May 18, 1942.

Petition by Sam Meltzer and Frederick W. De Mund against F. Homer Newton, Charles H. Newton, and State Land Office Board for a declaration of rights regarding title to land and for injunctive relief. Bill dismissed. Plaintiffs appeal. Affirmed.

*Baker & De Mund* (*Carl L. Whitchurch*, of counsel), for plaintiffs.

*Herbert J. Rushton*, Attorney General, *Edmund E. Shepherd*, Solicitor General, and *Elbern Parsons* and *Daniel J. O'Hara*, Assistants Attorney General, for State Land Office Board.

*Pelton & McGee*, for defendants Newton.

BOYLES, J. In this case, plaintiffs filed a bill in chancery under Act No. 36, Pub. Acts 1929 (3 Comp. Laws 1929, § 13903 [Stat. Ann. § 27.501]), for a

declaration of their rights and injunctive relief regarding certain real estate in Oakland county. We consider the case as one seeking injunctive relief. Plaintiffs ask to be declared the owners of a one-sixth interest in said land, and their bill of complaint prays that the State land office board be permanently enjoined from conveying said land to F. Homer Newton and Charles H. Newton, defendants. The court below, on motion, entered a decree dismissing the bill of complaint, from which plaintiffs appeal.

Prior to November 29, 1939, title to the land in question was in F. Homer Newton, Charles H. Newton (defendants herein), Osmun Wigg, William Fox and Mildred, his wife. The taxes thereon being delinquent for the years 1930 to 1935, inclusive, the entire parcel was sold by the county treasurer at the annual tax sale in May, 1938, and bid in to the State of Michigan. On November 29, 1939, the equity of redemption not having been exercised by any of the owners, the auditor general deeded the land to the State. Thereupon, the State of Michigan became the owner of the title in fee and a new chain of title was started. *Krench* v. *State of Michigan*, 277 Mich. 168; *Rathbun* v. *State of Michigan*, 284 Mich. 521.

On December 5, 1939, William Fox and Mildred, his wife, attempted to convey to plaintiffs herein by quitclaim deed a one-sixth interest in said land. Obviously, this deed conveyed nothing to plaintiffs, because at that time Fox and wife had no interest to convey. At the same time, Fox and wife executed and delivered to plaintiffs an instrument purporting to assign to plaintiffs any and all rights they might have in said land, authorizing plaintiffs to redeem in their name, to bid in the land at the scavenger sale either in plaintiffs' own name or in the name of Fox and wife, or to match the bid of any other party at the scavenger sale in the name of William Fox and Mildred Fox, his wife.

The land in question was sold by the State at scavenger sale April 25, 1941, and plaintiffs bid in the land as owners in their own name and in the name of Osmun Wigg and William Fox, by their agent, Edward Sugar. Nothing is claimed by plaintiffs through the interest of Osmun Wigg. Within 30 days thereafter, defendants F. Homer Newton and Charles H. Newton exercised the right to match the bid, claiming this right as persons having an interest in the land at the time of the tax sale (May, 1938). Act No. 155, Pub. Acts 1937, §§ 5, 7, as amended by Act No. 244, Pub. Acts 1939 (Comp. Laws Supp. 1940, §§ 3723-5, 3723-7, Stat. Ann. 1940 Cum. Supp. §§ 7.955, 7.957). The inapplicability of the 1941 amendments to this act as affecting the instant case will be pointed out later.

Subsequently, plaintiffs demanded a conveyance to them from the State land office board, asserting they had such a right as grantees or assignees of William Fox, former owner. The board refused to acknowledge this right and advised plaintiffs it would give defendants Newton a land contract as owners of an interest in the land at the time of the tax sale (May, 1938), having matched the bid. This conclusion reached by the board was correct. Plaintiffs had no interest in the land at the time of the tax sale, and their attempt to obtain such an interest on December 5, 1939, after the State's title became absolute, did not accomplish that result.

Plaintiffs claim that the deed and assignment to them on December 5, 1939, from William Fox and wife, gave them an enforceable right to match the highest bid; in other words, that Fox and wife, as former owners of an interest, could assign to plaintiffs the right, for 30 days after the scavenger sale, to match the highest bid. This claimed assignment was obtained by plaintiffs after the title of the State became absolute and plaintiffs obtained nothing by

it. The right to meet the highest bid is limited to parties having an interest in the land at the time of the tax sale. This right is not assignable. *Redford Union Schools, District No. 1,* v. *State Land Office Board,* 297 Mich. 535.

While the 1941 amendment to the act purports to extend the right to match the bid to the assignee or grantee of such owner (Act No. 363, § 5a, Pub. Acts 1941 [Comp. Laws Supp. 1942, § 3723–5a, Stat. Ann. 1941 Cum. Supp. § 7.955 (1)]), we have held that this amendment (effective June 19, 1941) does not apply to property sold to a purchaser who became entitled to a deed prior to its effective date. *National Bank of Detroit* v. *State Land Office Board,* 300 Mich. 240.

Prior to the tax sale in May, 1938, and up to the time when the title of the State became absolute on November 29, 1939, defendants Newton were co-owners of the property in question with Fox and wife from whom plaintiffs claim their rights, if any, were obtained. Plaintiffs assert that the Newtons could not cut off the rights of their co-owners by matching plaintiffs' bid after the scavenger sale, basing this claim on our holding in *Jacobsen* v. *Nieboer,* 299 Mich. 116. In that case, we held that a mortgagor could not cut off the rights of his mortgagee by subsequently purchasing the property at scavenger sale, after having defaulted in his covenant to pay taxes on the property. The decision is based on the principle that a mortgagor cannot take advantage of his own default after covenanting to pay taxes, and defeat the mortgage lien by subsequently obtaining title under the scavenger sale. The distinction between the *Jacobsen Case* and the case at bar is apparent. In the *Jacobsen Case,* the mortgagor who subsequently tried to cut off the mortgage lien by purchase from the State owed a

duty to the mortgagee to pay the taxes. In the case now before us, the Newtons owed no duty to Fox and wife to pay the taxes. They did not covenant with Fox and wife as co-owners to bear the entire tax burden. Fox and wife were just as liable for taxes as were the Newtons and no trust or contractual relationship existed between them whereby one must pay the taxes of the other. When the Newtons purchased from the State after the State's title had become absolute, the cotenancy between the Newtons and their former co-owners had already been terminated.

The distinction between the decisions relied on by plaintiffs in support of their claim and the case at bar is pointed out in those decisions. In *Page* v. *Webster*, 8 Mich. 263 (77 Am. Dec. 446), land was sold for taxes and the land was bid in by one of the cotenants who obtained a deed from the auditor general. This court said:

"Crane has no adverse title or claim. He occupies neither the position of one purchasing in an outstanding adverse title, nor of one purchasing from a *bona fide* purchaser at tax sale, whose title had become absolute, whereby the cotenancy had been dissolved. He stands simply as one who has paid upon compulsion taxes assessed against the property held by him in common with others."

In the case at bar, the Newtons purchased from the State after the State's title had become absolute. They come within the exception laid down in *Page* v. *Webster*, and recognized in *Butler* v. *Porter*, 13 Mich. 292. We are not here called upon to consider a suit between two former co-owners, which might arise in an ejectment action by one former cotenant against another (*Dubois* v. *Campau*, 24 Mich. 360). William Fox and wife are not parties in interest in

the case at bar. When the State's title became absolute on November 29, 1939, the original title came to an end, a new chain of title was started. *Krench* v. *State of Michigan, supra; Rathbun* v. *State of Michigan, supra.* Fox and wife ceased to have any more interest in the land than any stranger to the title. They merely had the privilege granted by the State land board act to acquire title by meeting the highest bid during the 30-day period after the scavenger sale. This was not a present vested right or a present interest. *James A. Welch Co., Inc.,* v. *State Land Office Board,* 295 Mich. 85; *Stickler* v. *State Land Office Board,* 297 Mich. 271.

Plaintiffs now assert they (or their agent) made their bid in the name of William Fox, acting for him under a provision in the assignment authorizing plaintiffs to match the bid from the scavenger sale in his name. Plaintiffs now claim they acted for William Fox under a "power of attorney." Passing the question whether Fox could thus authorize plaintiffs to bid in his name, plaintiffs did not in fact do so. Plaintiffs are the real parties in interest in this case, neither William nor Mildred Fox are made parties hereto, the bill seeks to establish title rights in plaintiffs, not in Fox. If successful under the bill filed, title would be in plaintiffs not in Fox or his wife. There is no merit in this claim.

Counsel for plaintiffs, in a reply brief, now inconsistently advance the theory that they are not attempting to rely on the assignment or "power of attorney" to match the bid in the name of Fox, but rely on the right to make the bid in their own name as owners of an interest in the land. We quote from plaintiffs' reply brief:

"In the case at bar, however, the plaintiffs are in no way attempting to match a bid. In the case at bar, the bid at the scavenger sale was made by these

plaintiffs, and plaintiffs are merely contesting the alleged right of defendants Newton as co-owners with plaintiffs to match plaintiffs' bid."

Their bill of complaint alleges that plaintiffs rely upon the quitclaim deed and "assignment" from Fox and wife, and upon section 5a of the act as added in 1941. As pointed out, this amendment does not affect the case at bar. If plaintiffs could under any theory be considered as co-owners with the defendants F. Homer and Charles H. Newton, their rights as co-owners could be claimed only as a result of the quitclaim deed and the assignment from William Fox and wife. That is the only possible basis for plaintiffs' claim in this case. As we have pointed out, plaintiffs acquired no title or interest in the land by virtue of the conveyance or assignment from the former owners, Fox and wife, and their present claim of rights as co-owners is without foundation.

The bill of complaint fails to state a cause of action against any of the defendants. Plaintiffs insist that because the motion to dismiss was made only on behalf of the State land office board and its members, the bill should not have been dismissed as against the Newtons. In view of our holding that plaintiffs acquired no rights whatever under the circumstances, there is no persuasive reason why the case should be remanded for further proceedings. Equity will dispose of the entire matter on the record before us.

The decree is affirmed. Defendants Newton not having filed a separate brief, no costs are allowed.

CHANDLER, C. J., and NORTH, STARR, WIEST, BUT-ZEL, BUSHNELL, and SHARPE, JJ., concurred.