**F. P. E. Noteholders Corporation, Petitioner, v. Commissioner of Internal Revenue, Respondent.**

Docket No. 2804. Promulgated July 20, 1945.

*Kurt J. Kremlick* (an officer), for the petitioner.
*Melvin S. Huffaker, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge*: This case involves income tax liability and declared value excess profits tax liability. Deficiencies were determined as follows:

| Year ended Oct. 31— | Income tax | Declared value excess profits tax |
|---|---|---|
| 1939 | $1,045.60 | $115.76 |
| 1940 | 124.68 | |
| 1941 | 2,973.77 | 116.91 |

The question is whether petitioner, in computing its basis for property acquired at "scavenger sale" under the law of Michigan, could add to the amount paid at such sale a value for a "right to redeem" previously held by it.

A stipulation of the facts was filed by the parties, and we find the facts as therein set forth. Omitting references to exhibits attached, which are not considered necessary of recital, such stipulation in material part reads:

1. Petitioner is a Michigan corporation, with its principal office at 1402 Eaton Tower, Detroit, Michigan. The Federal tax return for the year 1941, the year involved in this proceeding, was filed with the collector for the district of Michigan at Detroit, Michigan.

2. In reporting income, petitioner files returns on a cash basis and uses a fiscal year which commences November 1 and ends October 31.

3. Petitioner was incorporated under the laws of Michigan on December 7, 1938, as a result of 77–B reorganization proceedings which were instituted May 7, 1937, in the United States District Court for the Eastern District of Michigan, Southern Division, by the creditors of Francis Palms Estate Properties, Inc. The plan was confirmed August 10, 1938, and the former noteholders of Francis Palms Estate Properties, Inc., became the stockholders of petitioner. The stock was then placed in the hands of a stock-trustee who issued voting trust certificates.

4. Under the plan of reorganization, certain parcels of real estate were to be transferred to the petitioner to manage and liquidate and distribute the proceeds pro rata to the stockholders. One of the properties to be transferred to petitioner was known as the Chesterfield Farm. In the reorganization proceedings, two appraisals were made of Chesterfield Farm for the benefit of the court; one such ap-

praisal was for $65,000 and was made by "Taney"; the other appraisal was for $75,825 and was made by "Eston." At the time those appraisals were made, the delinquent taxes on Chesterfield Farm amounted to $38,192.33 and the then assessed valuation for state and local tax purposes was $82,900.

5. On May 1, 1938, and prior to confirmation of the plan (August 10, 1938), the Chesterfield Farm property was acquired by the State of Michigan at tax sale. In the reorganization proceedings, petitioner acquired the right to redeem Chesterfield Farm within an eighteen-month statutory period for redemption which expired November 3, 1939, but petitioner did not redeem such property within such period and title thereto at that time vested and became absolute in the State of Michigan.

6. Accumulated and unpaid taxes against Chesterfield Farm as of November 3, 1939, amounted to approximately $65,000.

7. In February 1940 Chesterfield Farm was put up at public auction by the State of Michigan to be sold at a so-called "scavenger sale" as provided by Act 155, Public Acts of Michigan 1937, as amended; sections 7.951–7.964, Michigan Statutes Annotated, and was purchased at that sale by the petitioner on land contracts for $21,464.86.

8. After petitioner purchased the Chesterfield Farm property at scavenger sale, the property was subdivided and a number of lots therein were sold by petitioner in 1941. In determining the cost basis of the entire Chesterfield Farm property to be used by petitioner for the purpose of computing gain or loss on the individual lots sold in 1941 and thereafter, the petitioner set up on its books a value of $25,000 for the right to redeem such property as of the date of its incorporation in 1938 and petitioner included that amount in the cost basis in addition to the purchase price paid therefor at the scavenger sale, plus subsequent improvements.

9. The only question in this proceeding is whether under such circumstances the $25,000 item (referred to in paragraph 8 above) should be included as a part of the cost of such property to petitioner.

The only assignment of error set forth in the amended petition filed has to do with the year ended October 31, 1941, and in substance alleges error of the Commissioner in disallowing, as a part of cost of Chesterfield Farm purchased by petitioner at scavenger sale the amount of $25,000 set up on petitioner's books as the value of its right to redeem such property at such scavenger sale.

The parties have filed briefs devoted in substance to the question whether the petitioner, when it purchased at scavenger sale in February 1940, did so, as petitioner in effect argues, pursuant to a right in the nature of an equity of redemption owned by it since its acquisition, or since August 10, 1938, when the plan of reorganization was

confirmed under section 77–B of the Bankruptcy Act; or whether, as respondent contends, petitioner had lost all interest in the property when the period of redemption expired on November 3, 1939, and title thereto at that time vested and became absolute in the State of Michigan, so that, when petitioner purchased at scavenger sale in February 1940 it did so as a mere purchaser and has in the property only the base of $21,464.86 purchase price, and not also the $25,000 which petitioner had set up on its books as cost of its right to "redeem."

We held by memorandum opinion entered March 30, 1945, that the question so briefed was unnecessary of decision, since, under the stipulated facts, we found we could not say that the $25,000 was the petitioner's basis for the rights acquired by it in 1938 in the reorganization proceedings. The petitioner, thereupon filed its motion for reconsideration, alleging in substance that the intent of the stipulation had been that the $25,000 was the petitioner's basis for such rights, and that the decision entered be vacated. Upon hearing of the motion, the respondent conceded same; and we therefore now consider and hold that the petitioner had a basis of $25,000 in any rights acquired by it in 1938 as to the property in question.

The question now before us, therefore, is whether the petitioner may, in the computation of its basis upon later sale of the land, include such $25,000, or whether it is limited to the $21,464.86 paid by it for the land at scavenger sale in February 1940. The answer depends upon whether petitioner's title to the land at the time the sales were later made after subdivision of the property was so connected with the acquisition in 1938 that the original investment should be considered as basis. The petitioner argues that, although it did not redeem the property in November 1939, within the ordinary eighteen-month redemption period, nevertheless, under the Michigan statute it did not lose all interest in the land; that it was an "owner" within the Michigan statute when it purchased the land at scavenger sale in February 1942; that the $25,000 was the cost or basis to it for such position of "owner"; and that therefore the $25,000 must be included in its basis for purposes of later sale.

The respondent, in substance, contends that at the expiration of the eighteen-month period of redemption in November 1939 title to the land "vested and became absolute in the State of Michigan" (which fact is stipulated), and that therefore the petitioner had no further interest in the land, by virtue of its former rights, but had a mere privilege, under the Michigan statute, of bidding at the scavenger sale, so that its basis is only the amount paid at such sale; and that petitioner suffered a loss when the period of redempton expired in November 1939.

Determination of the petitioner's rights here requires examination of the Michigan statute. The parties are in agreement that (except for the definition of "owner" found in § 7.955 (1) of Michigan Statutes Annotated) such rights are governed by § 7.957 of that statute. That section, after providing for scavenger sale in February of each year of real estate acquired by the state and that no bid shall be accepted for less than 25 percent of assessed valuation, provides that payment shall be made:

* * * not later than the closing of the local office of the state land office board on the following business day: * * * *Provided further*, That if the person making the highest bid shall be an owner and shall within the time for making the required payment make application to the board or its representative to purchase on land contract, full payment in cash may not be required but said board may enter into an agreement with said owner for the payment of the sum bid as hereinafter provided. * * * Any owner shall have the right for a period of 30 days after the making of the highest bid, as in this section provided, to meet such highest bid, by paying the amount thereof to the representative of the board conducting the sale in such county, or he may on application to the said land office board enter into an agreement with such board for the payment of the sum required to meet such highest bid, in installments to be paid over a period of not to exceed 10 years, with interest on unpaid installments computed at the rate of six percent per annum from the date of said agreement * * *.

As above seen, the parties have stipulated that in February 1940 the land "was put up at public auction by the State of Michigan to be sold at a so-called 'scavenger sale' * * *, and was purchased at that sale by the petitioner on land contracts for $21,464.86." The parties upon brief seem to be in agreement that this means that the petitioner matched a highest bid within the 30-day period permitted by the statute, and so acquired the property.

We have reviewed the cases cited to us by both parties on this question, and find very few to be so applicable as to be of assistance. In our opinion, under the Michigan statute the petitioner is entitled to include in its basis the $25,000 paid in 1938. Though it is true that the State of Michigan, within the expression of the statute and the stipulation herein, became the absolute owner of the property at the end of the eighteen-month redemption period, nevertheless, when the entire statute on this subject is read the former owner does have left something in the nature of an interest in the land. The respondent on brief, though contending that no "equity of redemption" survived after November 3, 1939, concedes that what the petitioner retained "perhaps more nearly resembles what might be termed a 'privilege' or 'option,' or even 'right' to purchase property at a price no greater than that which an absolute stranger to the transaction would be willing to pay in an arm's length transaction." Moreover, the Michigan courts have recognized a special status for the former

owner. Thus *Adams* v. *McAlpine*, 303 Mich. 375; 6 N. W. (2d) 551, refers to the "Right to repurchase premises." In *James A. Welch Co.* v. *State Land Office Board*, 295 Mich. 85; 294 N. W. 377, after stating that after the expiration of the period of redemption the plaintiff ceases to have any more interest in the title than any stranger, the court adds: "The State, however, granted to it a right or privilege for a 30-day period after the sale of the land at the so-called scavenger sale, to acquire title by meeting the highest bid." Later, the court terms the right or privilege as "not a present vested right or a present interest; it is a mere contingent right which may or may not happen." To the same effect is *Piotrowski* v. *State Land Office Board*, 302 Mich. 179; 4 N. W. (2d) 514, citing the *Welch* case, *supra*. The statute defines the "owner" who may purchase at the scavenger sale as one who has "any estate or enforceable legal interest in the land at the time title thereto vested in the State." It is clear that the petitioner had such an enforceable legal interest in the land, for, at the time the state acquired "absolute" title at the end of the redemption period, and for 31 days after the scavenger sale, it had a privilege or a right which it could protect and insist on in its right to purchase by meeting the highest bid at the scavenger sale. The term "interest" has been given a broad sense, when used in connection with this general statute, by the Attorney General of Michigan. Op. Atty. Gen., Feb. 11, 1938. Even though the right may not have been vested, nor have constituted a "present interest" prior to bidding at the scavenger sale, nevertheless, we think it so connects the petitioner's later title with its former rights acquired in 1938 that it would be erroneous to hold that the petitioner has no basis in the expense incurred in the acquisition of the earlier rights to the property. It was only by the expenditure of the $25,000 that the petitioner was so able to fit the statutory definition of "owner" that it could so command the situation upon the scavenger sale as to acquire the property by meeting the highest bid at such sale. A stranger with no previous investment in the property so as to become "owner" thereof could not have acquired it in the same manner as did the petitioner. The fact is that the petitioner acquired the property at an expense of $21,464.86, plus the expense of acquiring its right to meet the highest bid at the scavenger sale. Since that right would have been nonexistent without the expenditure of the $25,000, we consider that the latter item is a proper portion of the petitioner's investment in the property. The statute (§ 7.957, Michigan Statutes Annotated), although only in the heading of that section, refers to the right of the owner to meet the highest bid as "redemption."

Though the respondent argues that the right to match the highest bid at the scavenger sale belonged only to the person having the largest financial investment in the property, we find that portion of

the statute to refer to a situation where two or more persons are entitled to the privileges of an owner. The record here is plain that only one person, the petitioner, occupied that position, for it is stipulated that the "petitioner acquired the right to redeem Chesterfield Farm within an eighteen-month statutory period," and, further, that the farm was purchased at the scavenger sale by the petitioner.

The respondent also argues that the petitioner, upon the expiration in 1939 of the time for redemption under the eighteen-month statutory period, sustained a loss of its investment. *J. C. Hawkins*, 34 B. T. A. 918; affd., 91 Fed. (2d) 354, involving a real estate mortgage foreclosure in California, is primarily relied upon. Neither that case nor any other cited, however, involved a statute leaving any privilege or right of any kind in the former owner after the expiration of the redemption period, so that it is clear that the present question did not occur. *W. C. Coleman*, 31 B. T. A. 319; affd., 81 Fed. (2d) 455, though not parallel in fact, offers in logic analogy to the situation here at hand. Therein we held that certain common stock did not become worthless in 1930. One of the reasons for so holding was that the holders of the common stock received, in connection with a reorganization, warrants entitling them to subscribe for stock in the new company at a certain figure. We said that under such circumstances the record did not support the contention that the holders of the common stock did not receive therefor something of value in the warrants. Considering the continuation of petitioner's interest in the land here involved, in our opinion, no loss was suffered by it when the period of redemption expired in 1939.

We therefore hold that the Commissioner erred in excluding the $25,000 from the basis of the property.

Reviewed by the Court.

*Decision will be entered under Rule 50 for the fiscal year 1941, and for the respondent for the fiscal years 1939 and 1940 in the amount of deficiencies determined.*

---

MURDOCK, *J.*, dissenting: I think that whatever investment the petitioner had in the property was lost on November 3, 1939, when the period of redemption expired, and consequently the amount of that investment could not be added to the cost of the property when the petitioner subsequently acquired the property in the scavenger sale.

ARNOLD, *J.*, agrees with this dissent.

---

HILL, *J.*, dissenting: The majority holds that petitioner had an enforceable legal interest in the Chesterfield Farm property at the

time of the scavenger sale in February 1940, which interest is valued at $25,000 and which amount is to be added to the purchase price at the sale in computing petitioner's basis on that property. With this conclusion I can not agree.

The stipulated facts show that the petitioner was organized under the laws of Michigan on December 7, 1938, pursuant to a 77–B reorganization plan. They further show that as of May 1, 1938, Francis Palms Estate Properties, Inc., the debtor in that reorganization, was the owner of Chesterfield Farm and that on that date the property was acquired by the State of Michigan at a tax sale. On August 10, 1938, the plan of reorganization whereunder petitioner was to be organized was confirmed by order of the court. The plan provided that Chesterfield Farm was to be transferred to petitioner when organized. The majority has found as a fact that as a result of reorganization proceedings this petitioner acquired the right to redeem Chesterfield Farm from the tax sale; that the eighteen-month statutory period of redemption expired November 3, 1939; and that petitioner did not exercise such right of redemption. It is stipulated that on that date the State of Michigan acquired an absolute title to the property. In February 1940 the property was sold at a public auction by the State of Michigan and was purchased by petitioner for $21,464.86.

It seems to me that under the Michigan statutes existing at the time, that is, 1939 and 1940, an owner of real estate which had been sold for taxes had two rights in connection therewith. One was the right to redeem from the tax sale. This right is assignable and merchantable, and subject to conveyance by deed or other instrument. *Mercer* v. *Stephens*, 185 Mich. 290; 151 N. W. 1032. The right to redeem comes into existence at the time of the tax sale and may be exercised by the holder thereof at any time within the eighteen-month period of redemption.

The other is the privilege of matching bids at the scavenger sale conducted by the state after the period of redemption has expired, at which time the state has an absolute fee simple title. Once the state acquires title after the expiration of the period of redemption, all rights in the land of the former owner are cut off. *Welch Co.* v. *State Land Office Board*, 295 Mich. 85; 294 N. W. 377. The right to exercise the privilege of matching bids is contingent on the acceptance by the State Land Office Board of a bid at a scavenger sale. It has been held that this right to match the highest bid is not a condition upon which the state acquires title. This privilege can not arise until a sale has been held and a bid accepted. Until such bid is accepted it is not a present interest or a vested right. *Welch Co.* v. *State Land Office Board, supra.* The State Land Office Board has the power to reject bids received at a scavenger sale, in which event

the property becomes subject to disposition by the board under a different section of the statute. That section provides that a municipality has a right upon request to receive a deed to any property so held on the ground that it is needed for public purposes. See *Porter* v. *State Land Office Board*, 13 N. W. (2d) 837. In view of the broad discretion and control given the State Land Office Board over the disposition of lands acquired as the result of a tax sale, I do not see how a former owner could be said to have any real property right therein. The privilege of matching bids is subject to many conditions, none of which may be fulfilled. It is a mere expectancy which may never be realized. The entire purport of the Michigan decisions is to this effect. These contingencies which may never happen are, in my opinion, too remote to justify the treatment given them by the majority here. They have given this privilege of matching bids at a scavenger sale the same dignity rightly accruing to the right to redeem from the tax sale. If this were a question of deductibility of a loss, it seems to me that a taxpayer would have real difficulty in claiming its loss in a taxable year after the one in which the statutory period of redemption had expired. The right of redemption from the tax sale is a real and substantial right and capable of being measured for loss purposes under the revenue acts. The $25,000 paid by this petitioner for any rights it received in the reorganization proceedings certainly could not be said to have been paid for anything else. I think it was the intention that this amount be paid for the right of redemption and it is so stipulated. The privilege of matching bids did not exist at the time and could not come into being until a scavenger sale was held and an acceptable bid was received. In the light of the majority opinion there lurks the question of whether a deductible loss would be sustained by the failure of a former owner to exercise this privilege. The privilege of matching bids is so illusory in nature and subject to so many contingencies that I do not see how failure to use it could result in a loss, but such result, whether or not so intended, is a corollary to the holding of the majority.

In any event, in the case before us petitioner was not in existence at the time of the tax sale in May 1938. It has been held that the privilege of matching bids is limited to persons having an interest in the land sold at the time of the tax sale. *Redford Union Schools* v. *State Land Office Board*, 297 Mich. 535; 298 N. W. 124. Such was the law of Michigan prior to a nonretroactive amendment enacted in 1941. Hence I do not see how it can be held that petitioner acquired the privilege of matching bids by virtue of the reorganization proceedings. See *Meltzer* v. *State Land Office Board*, 301 Mich. 541; 3 N. W. (2d) 875. I think the case of *Cobleigh* v. *State Land Office*

*Board*, 305 Mich. 434; 9 N. W. (2d) 665, forecloses petitioner in this proceeding. In that case a trustee in bankruptcy brought suit for a deed claiming to be entitled to match bids at a scavenger sale as the successor of interest of his bankrupt. The court dismissed the bill. In so doing, it was stated therein:

The bankrupt, Nathan Greenberg, during the period immediately preceding his adjudication had two separate and distinct rights. Under the provisions of 1 Comp. Laws 1929, § 3467, as amended by Act No. 52, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 3467, Stat. Ann. 1940 Cum. Supp. § 7.120), he could redeem his land from the tax sale before title vested in the State, and this privilege of redemption was transferable and assignable. * * * This right of redemption under the transferability test of the Bankruptcy Act was property of the bankrupt, which passed to his trustee. The other right belonging to Greenberg was created by section 7 of Act No. 155, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 3723-7, Stat. Ann. 1940 Cum. Supp. § 7.957). As an owner, he had the privilege under this section of the statute of matching the highest bid at the "scavenger sale" and thereby redeem his property, but: "The right to match the highest bid at the scavenger sale is a granted privilege, limited to persons having an interest in the land at the time of the sale for unpaid taxes." etc. *Redford Union Schools* v. *State Land Office Board*, 297 Mich. 535, 537, 298 N. W. 124, 125.

See, also *Stickler* v. *State Land Office Board*, 297 Mich. 271, 297 N. W. 488. This privilege was neither a vested nor assignable right. * * *

\* \* \* \* \* \* \*

Since the granted privilege to match a bid is not an assignable right and is not one that the bankrupt could "by any means have transferred," it is not a property right which vested in Greenberg's trustee in bankruptcy.

\* \* \* \* \* \* \*

I think that case is controlling here and that the reorganization plan gave petitioner only the right to redeem from the tax sale, which right lapsed without having been exercised. I can not agree that petitioner acquired any right or interest by virtue of the reorganization proceedings which would permit it to match bids at the scavenger sale as the person having an interest in the real estate. The fact that petitioner was treated as owning this right and permitted to purchase under contract is not controlling. Under the *Cobleigh* case, the privilege could not pass to petitioner by virtue of the reorganization proceedings. I think it follows that petitioner should compute its basis of gain or loss on this real estate by the actual cost at the sale and nothing more. Petitioner suffered a loss cognizable for tax purposes when the statutory period of redemption expired, and if claimed it would have been deductible in computing its tax liability for the year 1939.

ARNOLD, *J.*, agrees with this dissent.